S. SEANAH DIXON
NDOC NO. 62866
HIGH DESERT STATE PRISON
POST OFFICE BOX 650
INDIAN SPRINGS, NV,
89070

TONEY A. WHITE                    **EMERGENCY COMPLAINT**
NDOC NO. 1214172
HDSP
POST OFFICE BOX 650
INDIAN SPRINGS, NV,
89070

PLAINTIFFS IN PRO SE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| SEANAH DIXON AND TONEY A. WHITE, | CIVIL ACTION NUMBER |
| PLAINTIFFS, | |
| VS. | |
| S. SALKOFF, TERRENCE JACKSON, ERNESTO TORRES, R. WILLIAMS, EDGAR LOPEZ-MAYA AND F. LOUVERTURE, CORRECTIONS OFFICERS AT HDSP; STATE OF NEVADA; CALVIN JOHNSON, WARDEN AT HDSP; GREG PICCININI, JEREMY BEAN AND JULIE WILLIAMS (HATOUSEK), ASSOCIATE WARDENS ("AWS") AT HDSP; D. ON- TIVEROS, JAY BARTH, UNKNOWN SYDIONGO, UNKNOWN MCKEEHAN, CORRECTIONS LIEUTENANTS AT HDSP; GUSTAVO SAN- CHEZ, UNKNOWN STEWART, UNKNOWN FINLEY AND UNKNOWN MOORE, CORREC- TION SERGEANTS AT HDSP; STACY BAR- RETT AND UNKNOWN YATES, CASEWORKERS AT HDSP; WILLIAM OBLAK, ROBERT ASHCRAFT, UNKNOWN MARTINEZ, MATTHEW LEONG, ROBERT JARRETT AND R. GARCIA, SENIOR CORRECTIONS OFFICERS ("SCO'S") AT HDSP; DAVID RIVAS, M.D. AND WILSON FULLA BERNALES, M.D.; | **EMERGENCY** COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983); VIOLATION OF THE REHAB- ILITATION ACT AND AMERICAN'S WITH DISABILITIES ACT (29 U.S.C. § 794; 42 U.S.C. § 12101, ET.SEQ.); STATE-SUPPLEMENTAL CLAIMS (1) ASSAULT AND BATTERY; (2) DEFA- MATION/SLANDER/ LIBEL; (3) GROSS NEGLIGENCE; (4) CONVERSION OF PROPERTY; (5) INTENTIONAL IN- FLICTION OF EMOTIONAL DISTRESS; (6) FRAUD/FRAUDULENT CONCEAL- MENT/OBSTRUCTION OF JUSTICE; (7) MEDICAL MALPRACTICE; (8) PROFESSIONAL MALPRACTICE/ NEGLIGENCE; AND DEMAND FOR JURY TRIAL. |

1

PHYSICIANS AT HDSP; J. ABCL AND
UNKNOWN O'CONNOR PSYCHOLOGISTS
AT HDSP; MIRIAM VIZCARRA-RODRI-
GUEZ, NURSE AT HDSP; AND JOHN/
JANE DOES 1 THRU 150, INCLUS-
IVE,

                    DEFENDANTS.

I.          INTRODUCTION

1.          PLAINTIFFS EXISTENCE AS STATE PRISONERS CONFINED
AT THE HDSP EXEMPLIFY THOSE OF THE TWILIGHT ZONE WHERE-IN
REALITY AND FACT THEIR HUMAN, CIVIL AND CONSTITUTIONAL
RIGHTS ARE NON-EXISTENT AND TRAMPLED ROUGHSHOD AT WILL
BY ROGUE OFFICIALS WHO SELECTIVELY INTERPRETE AND APPLY
GOVERNING LAW AND REGULATIONS TO THEIR BENEFIT, ARE DEFIANT
AND INDIFFERENT TO THE RULE OF LAW, INSENSITIVE TO HUMAN
SUFFERINGS AND WHO HAVE A COMPLETE LACK OF EMPATHY, RE-
GARD OR COMPASSION FOR THE LIVES, CUSTODY AND TREATMENTS
OF PLAINTIFFS LESS ALONE THEIR CONSTITUTIONAL RIGHTS.
AMIDST VARIOUS FLAGRANT VIOLATIONS OF PLAINTIFFS CIVIL,
HUMAN AND CONSTITUTIONAL RIGHTS AS WELL AS SEVERAL
STATE-LAW TORTS, PLAINTIFFS BRING THIS EMERGENCY ACTION
TO REDRESS SAID VIOLATIONS, SEEK JUST COMPENSATION
AND TO SECURE INJUNCTIVE RELIEF FOR THE PRESERVATION OF
LIFE, TO PREVENT WANTON AND UNNECESSARY PAIN AND SUFFER-
INGS AND IN WHICH TO PROHIBIT FURTHER EGREGIOUS
AND CAPRICIOUS CONSTITUTIONALLY OFFENSIVE ATROCITIES
FROM DEFENDANTS.

II.          JURISDICTION AND VENUE

2.          THIS CASE INVOLVES CONTROVERSIES BETWEEN
PARTIES INHABITING, EMPLOYED AT OR RESIDING IN
INDIAN SPRING NEVADA, COUNTY OF CLARK. UNDER
NEVADA REVISED STATUTE § 41.0322 AND 28 U.S.C.
§§ 1331, 1343 AND 1391 THIS COURT IS VESTED
WITH JURISDICTION OVER THE STATE AND FEDERAL
CLAIMS AND VENUE IS PROPER IN THIS COURT.

3.    PLAINTIFFS EXPRESSLY OBJECT TO ANY FEDERAL REMOVAL OF THIS CASE PURSUANT TO 28 U.S.C. § 1441.

III.    CONDITIONS PRECEDENT

4.    ALL CONDITIONS PRECEDENT HAVE BEEN ATTEMPTED, PERFORMED AND/OR EXECUTED.

IV    PARTIES

5.    PLAINTIFFS SEANAH DIXON[1]/ AND TONEY WHITE, (BOTH MEMBERS OF THE LGBTQ COMMUNITY) ARE BOTH U.S. CITIZENS, PRISONERS CONFINED AT HDSP AND RESIDENTS OF THE STATE OF NEVADA AND COUNTY OF CLARK.

6.    DEFENDANT CALVIN JOHNSON IS THE WARDEN OF HDSP AND ITS CHIEF EXECUTIVE OFFICER. HE IS CHARGED WITH RESPONSIBILITY OF IMPLEMENTING LOCAL PROCEDURES AND ENSURING THE CONSTITUTIONAL AND HUMANE TREATMENT AND CARE OF PRISONERS ENTRUSTED TO HIS CARE. HIS RESPONSIBILITY FURTHER ENTAILS PROPER SUPERVISION, TRAINING, HIRING, ASSIGNMENT AND DISCIPLINE OF ALL STAFF UNDER HIS CHARGE AND FURTHER ENSURING THAT THEY CONFORM TO THE CODE OF ETHICS CODIFIED AT AR 339 AND THAT STAFF WHO WITNESS FLAGRANT VIOLATIONS OF AR 339 AND TORT AND ABUSES OF POWER AND AUTHORITY BY OTHER EMPLOYEES NOT CONCEAL, COVER UP AND REMAIN SILENT TO PROTECT THE OFFENDER BUT RATHER FIND COURAGE TO REPORT THEM TO PROTECT DEPARTMENT AND PEACE OFFICER INTEGRITY, ENSURE TRANSPARENCY, MAINTAIN INTERNAL DISCIPLINE AND ORDER, PERMIT DISCIPLINE OF THE VIOLATOR AND HOLD THEM ACCOUNTABLE. HE IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY.

7.    DEFENDANT STATE OF NEVADA IS A SOVEREIGN STATE OPERATING MULTIPLE ARMS AND BRANCHES OF ITS GOVERNMENT INCLUDING NEVADA DEPARTMENT OF CORRECTIONS WHICH OPERATES UNDER COLOR OF STATE LAW AND AUTHORITY.

---

1.   MS. DIXON IS A MALE-TO-FEMALE TRANSGENDER AND SEEKS THAT THE COURT AND ALL PARTIES ADHERE TO RESPECTABLE PROPER PRONOUN BY ADDRESSING HER IN THE FEMININE CONTEXT.

3

22-0099

8.   DEFENDANTS GARY PICCININI, JEREMY BEAN AND JULIE WILLIAMS (MATOUSEK) ARE AW'S AT HDSP. AS AW'S ITS THEIR JOBS TO ENFORCE AND ENSURE THAT ALL SUBORDINATE SUPERVISORS UNDER THEIR SUPERVISION AND CONTROL ADHERE TO ALL AR'S AND OPERATIONS PROCEDURES ("OP'S") AND CONSTRAIN THEIR STAFFS CONDUCTS TO THE PERIMETERS OF AR 339. THEY WERE ALSO RESPONSIBLE FOR THE ADEQUATE TRAINING, DISCIPLINE, SUPERVISION AND ASSIGNMENTS OF DEFENDANTS D. ONTIVEROS, UNKNOWN SYDIONGO, JAY BARTH AND UNKNOWN MCKEEHAN. THEY ARE SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

9.   DEFENDANTS D. ONTIVEROS, JAY BARTH, UNKNOWN SYDIONGO AND UNKNOWN MCKEEHAM ARE CORRECTIONS LIEUTENANTS AT HDSP. DEFENDANTS GUSTAVO SANCHEZ, UNKNOWN STEWART, UNKNOWN FINLEY AND UNKNOWN MOORE ARE CORRECTIONS SERGEANTS AT HDSP. DEFENDANTS WILLIAM OBLAK, ROBERT ASHCRAFT, UNKNOWN MARTINEZ, MATTHEW LEONG, R. JARRETT AND UNKNOWN GARCIA ARE SCO'S AT HDSP. DEFENDANTS S. SALKOFF, TERRENCE JACKSON, ERNESTO TORRES, R. WILLIAMS, EDGAR LOPEZ-MAYA AND F. LOUVERTURE ARE CORRECTIONS' OFFICERS AT HDSP. STACY BARRETT AND UNKNOWN YATES ARE CASE WORKERS AT HDSP.

10.   DEFENDANTS SANCHEZ, JARRETT, TORRES, FINLEY, YATES, MCKEEHAM, WILLIAMS AND LOUVERTURE ARE SUED IN THEIR INDIVIDUAL CAPACITY. DEFENDANTS MOORE, BARTH, STEWART, OBLAK, ASHCRAFT, GARCIA, MARTINEZ, LEONE, SALKOFF, JACKSON, LOPEZ-MAYA, ONTIVEROS, SYDIONGO, PICCININI, BEAN, WILLIAMS(MATOUSEK) AND BARRETT ARE SUED IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

11.   DEFENDANTS DAVID RIVAS AND WILSON BERNALES ARE/WERE PHYSICIANS AT HDSP. DEFENDANTS J. ABEL AND UNKNOWN O'CONNOR ARE CLINICAL PSYCHOLOGISTS AT HDSP. DEFENDANT MIRIAM VIZCARRA-RODRIGUEZ IS A NURSE AT HDSP. THEY ARE SUED IN THEIR INDIVIDUAL CAPACITY.

12.   JOHN/JANE DOES 1 THRU 150 ARE VARIOUS ADMINISTRATORS, SERGEANTS, LIEUTENANTS, SCO'S, MEDICAL, DENTAL, MENTAL HEALTH, PHARMACY STAFF AND NURSES AND OFFICERS AT HDSP WHOM WERE INVOLVED IN THE EVENTS AND INCIDENTS DESCRIBED HEREIN. THEY ARE SUED UNDER THE PSEUDONYMS OF DOES DUE TO PLAINTIFFS CURRENT INABILITIES TO IDENTIFY THESE DEFENDANTS BY NAME. UPON DISCOVERING THEIR IDENTITIES AND CAPACITIES THEY WILL BE AMENDED TO THE PLEADINGS.

'22-0099

13.    AT ALL TIMES CONSISTENT WITH THIS
COMPLAINT EACH DEFENDANT ACTED UNDER COLOR
OF STATE LAW AND AUTHORITY.

# V.    FACTS — GENERAL

14.    PLAINTIFFS, BOTH PRISONERS AT HDSP ARE SERV-
ING LIFE SENTENCES CURRENTLY WITH THE NDOC AND
SUFFER FROM SUFFICIENTLY SERIOUS MEDICAL CONDITIONS
WHICH IF LEFT UNMONITORED AND UNTREATED ARE CERTAIN
TO PRODUCE DEADLY CONSEQUENCES.

15.    MS. DIXON IS AFFLICTED WITH A UNKNOWN
HEART CONDITION, HIGH BLOOD PRESSURE, SPINAL INJURIES,
POSSIBLE THROAT AND COLON CANCER, AND A NEUROLOGICAL
CONDITION  ALL WHICH CAUSE HER CONSTANT FATIGUE,
WEAKNESS, SYNCOPY, PERFUSE SWEATING, LACK OF APPETITE,
BREATHING DIFFICULTIES, HEART AND CHEST PAINS, CON-
STANT INTOLERABLE AND EXCRUCIATING MIGRAINS AND
UNBEARABLE DISTRIBUTED INTENSE PAINS THROUGH HER
NECK, BACK, CALVES, LEGS AND FEET. SHE CONSISTENTLY
HAS OBSERVED AND REPORT BLOOD IN HER STOOL AND
SUFFERS FROM A CONDITION THAT ROUTINELY IMPAIRS
HER BALANCE. AS A TRANSGENDER WHO PROJECTS FEMININE
CHARACTERISTICS, SHE IS ON AND HAS REMAINED ON FOR
QUITE DURATION HORMONE REPLACEMENT THERAPY WHICH
ALSO WARRANTS  ENDOCRINOLOGY MONITORING AND CON-
SULTS. SHE HAS BEEN CONSULTED WITH A CARDIOLOGIST
HOWEVER NOT ALL OF HIS SPECIALTY ORDERS HAVE BEEN
ADHERED TO BY NDOC.

16.    PLAINTIFF WHITE ON THE OTHER HAND SUFFERS
FROM A LIFE LONG CHRONIC SEIZURE DISORDER, CHRONIC
ASTHMA AND A CONDITION KNOWN AS COCCIDIOIDMYCOSIS
("COCCI" AKA VALLEY FEVER). HE TOO SUFFERS FROM SPINAL
AND A BACK CONDITION RENDERED PAINFUL WHEN MADE TO
WEAR FLAT OR SHOWER SHOES LONG TERM. HE HAS SUFFERED
AND BEEN TREATED FOR SEIZURES SOME 36+ YEARS TODATE
BEING EVALUATED AND TREATED BY IN EXCESS OF 200 PHYSI-
CIANS AND NEUROLOGISTS WITH SEIZURE CONTROL AT 97%
EFFICACY WITH USE OF THE ANTI-EPILEPTIC DRUG ("AED")
GABAPENTIN (AKA NEURONTIN).

17.   WHITE HAS REMAINED DIAGNOSED AND TREATED FOR ASTHMA FOR OVER A QUARTER CENTURY WITH INHALERS. HIS COCCI CONDITION IS FATAL IF NOT MONITORED AND TREATED WITH HIS ANTI-FUNGAL POSACONAZOLE WHICH IS WARRANTED FOR LIFE LONG DURATION COUPLED WITH COCCI SPECIALIST CONSULTS. HIS COCCI CONDITION HAS RESULTED IN 5+ SURGERIES TO HIS LEFT WRIST TO CONTROL THE INFECTION AND A LEFT WRIST BRACE FOR ANTI-FLEXION WHICH CAUSES RELAPSE. WHEN NOT PROVIDED HIS BRACE OR ANTI-FUNGAL HIS INFECTION PAINFULLY RELAPSES. HIS RAPIDLY DECLINING VISION PLACES HIM AT INCREASED RELIANCE ON HIS PRESCRIPTION EYEWEAR WHICH WHEN NOT PROVIDED CAUSE EXCRUCIATING MIGRAINS. FOR CLOSE TO 40 YEARS HE HAS BEEN UNDER PSYCHIATRIC CARE BOTH IN CUSTODY AND WHILE AT LIBERTY REMAINING ON A LITANY OF POWERFUL ANTI-PSYCHOTICS TO COPE WITH HIS PSYCHOSES.

18.   PLAINTIFFS COLLECTIVE DISABILITIES WHICH IN-CLUDE SEIZURE DISORDER, ASTHMA, SCHIZOPHRENIA, PTSD, GRAVE DEPRESSION, HALLUCINATIONS, COCCI, LEFT WRIST IMMOBILITY, SPINAL AND NECK CONDITIONS, CANCER AND OTHERS ARE AND HAVE BEEN DOCUMENTED IN THEIR MEDICAL RECORDS RETAINED BY DEFENDANTS FAR PRIOR TO AND AT ALL TIMES MATERIAL TO THIS ACTION AND BOTH PLAINTIFFS ARE REGARDED AS HAVING SAID DISABILITIES BY THE PUBLIC ENTITY NDOC.

19.   AT ALL TIMES MATERIAL TO THIS ACTION DEFENDANTS JOHNSON AND DIRECTOR OF NURSING DOES HAD TO PLACE AND PRACTICE AND TACITLY APPROVED AND CONDONED NURSING AND HDSP FACILITY PROTOCOLS WHICH PERMITTED ALL MEDICAL AND NURSING STAFF TO ELUDE BEING PROPERLY IDENTIFIED BY STAFF OR THE VERY PATIENTS THEY ABUSED AND FOR PURPOSES OF LITIGATION AND INTERNAL GRIEVANCES. THIS FOSTERED A CULTURE AND ATMOSPHERE WHICH FUELED, ENCOURAGED AND CONDONED THE PROPENSITY OF MEDICAL STAFF TO ENGAGE IN ABUSIVE MEDICAL PRACTICES STEALTHLY, WITHOUT FEAR OF ACCOUNTABILITY WHILE AT THE SAME TIME PREVENTING PATIENTS SUBJECTED TO THE CRUEL AND INSENSITIVE ABUSES FROM IDENTIFYING THEIR ABUSERS. WHILE AL-THOUGH SWORN PEACE OFFICERS ARE REQUIRED TO WEAR NAMEPLATES CLEARLY IDENTIFYING THEMSELVES, MEDICAL STAFF CONVERSELY ARE PRIVILEGED TO CIRCUMVENT DISCLOSING THEIR IDENTITY.

6

A.    MEDICAL TREATMENT OF SEANAH DIXON

20.    DIAGNOSED WITH GENDER IDENTITY DISORDER/ GENDER DYSPHORIA ("GID/GD") MS. DIXON HAS REMAINED ON HORMONE REPLACEMENT THERAPY/ HORMONE THERAPY ("HRT/HT") FOR EXTENDED DURATION. PURSUANT TO INTERSTATE COMPACT AGREEMENT SHE WAS TRANSFERRED TO AND REMAINED UNDER CUSTODY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") FOR SOME 16+ YEARS WHERE SHE MET CO-PLAINTIFF WHITE.

21.    IN CDCR SHE WAS COMPREHENSIVELY AND CON- SISTENTLY EVALUATED, TREATED AND MONITORED FOR HER MANY MEDICAL MALADIES. SHE FREQUENTLY CONSULTED WITH A ENDOCRINOLOGIST FOR HER HRT/HT MONITORING AND ROUTINE TESTINGS INCLUDING BLOOD WORKS. ULTIM- ATELY, IN APPROXIMATELY 2015 SHE WAS RETURNED TO NDOC CUSTODY. HER MEDICAL RECORDS ACCOMPANIED THE RETURN PLACING MEDICAL DEFENDANTS ON NOTICE OF HER NEED FOR CONTINUITY OF CARE AND ROUTINE FOLLOW UPS WITH SPECIALTY CLINIC CONSULTS INCLUDING ENDOCRIN- OLOGY AMONGST OTHERS [2/]. SHE HAS REMAINED IN NDOC CUSTODY SINCE HER CALIFORNIA RETURN.

22.    SINCE HER RETURN AND TODATE, SHE HAS SUBMITTED A SMORGASBORD OF REQUESTS AND COMPLAINTS (BOTH WRITTEN AND VERBAL) TO NDOC MEDICAL DEFENDANTS AND DOE NURSES PERTAINING TO AND INVOLVING EACH OF THE AILMENTS SET FORTH IN PARAGRAPH 15, SUPRA. WHILE MOST, IF NOT ALL, HAVE FALLEN ON DEAF EARS, OF THE FEW IN WHICH PHYSI- CIAN ORDERS DID MATERIALIZE IN DIAGNOSTIC EFFORTS TO RULE OUT, SUBSTANTIATE AND TREAT THE COMPLAINED OF CONDITIONS, THOSE ORDERS HAVE BEEN DEFIANTLY IGNORED, DEFIED AND SUBJECT TO PROTRACTED DELAY TODATE TO HER DETRIMENT.

23.    NAMELY, A AFP MARKER TEST, MRI AND CT SCAN HAVE PREVIOUSLY BEEN ORDERED BUT AS OF TODATE HAVE NOT BEEN PERFORMED TO DIAGNOSE AND TREAT POSSIBLE COLON AND THROAT CANCER, SPINAL/NECK INJURIES/CONDITIONS AND RESULTING INTOLERABLE PAINS AND WANTON SUFFERINGS.

---

2.  AR 639 PROHIBITS INMATES FROM POSSESSING NDOC MEDICAL RECORDS ABSENT COURT ORDER AND SOLELY PERMITS ACCESS TO SAME FOR REVIEW AND NOTE TAKING PURPOSES ONCE A YEAR FOR 1 SINGLE HOUR. THIS EFFEC- TIVELY PREVENTS MS. DIXON'S ABILITY TO ARTICULATE FACTS WITH SPECIF- ICITY AS THEY RELATE TO STANDING ORDERS BEING DEFIED AND TREATMENTS BEING IGNORED WHICH MAY IN FACT BE THE CONTRIBUTING CAUSES OF HER RAPID DETERIORATION. SHE SEEKS THAT THIS COURT ORDER THEIR DISCLOSURE UNDER SEAL AND IN CAMERA FOR ITS REVIEW.

22-0099

24.   AS A PROTECTIVE CUSTODY TRANSGENDER ("TG") PRISONER, HISTORICALLY SHE WAS CALLED UPON TO LEVERAGE AND PLACE HER PERSONAL SAFETY AND LIFE IN JEOPARDY BY AGREEING TO BE TRANSPORTED FROM ELY STATE PRISON FOR A ENDOSCOPY WITH DANGEROUSLY VIOLENT GENERAL POPULATION PRISONERS FOR THE SAKE OF RECEIVING HER ENDOSCOPY OR ALTERNATIVELY REFUSING IT IN THE INTEREST OF HER LIFE AND SAFETY AND BEING LEFT UNTREATED TO SUFFER TORMENT, PAIN AND WANTON SUFFERINGS. LOGISTICS DICTATE USING HER BETTER JUDGMENT SHE CHOSE HER LIFE AND SAFETY. AS PRECISELY PREDICTED, A SECOND PC PRISONER WHO REGRETA-BLY OPTED IN THE SAME TRANSPORT FOR MEDICAL TREATMENT THE SAME DAY WAS BRUTALLY ATTACKED BY GP INMATES DUR-ING THE TRANSPORT TO HIS DETRIMENT.

25.   BY OCTOBER 2021, CONCERNS OF ESP PHYSICIANS HAD HEIGHTENED WHEN E-PATCH HEART TESTING RESULTS EMERGED. PLAINTIFF WAS EMERGENTLY TRANSPORTED TO HDSP FOR URGENT CON-SULT WITH A CARDIOLOGIST. FOR A WEEK AFTER HER ARRIVAL SHE WAS HOUSED IN THE INFIRMARY. SHE WAS ASSESSED THERE AND CON-TINUED HER HEART, CHEST AND BREATHING DIFFICULTY COMPLAINTS 3i. SHE WAS ULTIMATELY EXAMINED BY DEFENDANT RIVAS WHO, ALTHOUGH HAVING NO EDUCATION IN CARDIOLOGY OR SPECIALTY QUALIFICATION TO DO SO, TO HER DETRIMENT PRESCRIBED PROPONOLL AND DIS-CHARGED HER FROM THE CLINICAL SETTING WITH AN UNCERTAIN CARDIOLOGIST CONSULT DATE. UNBEKNOWN TO PLAINTIFF WAS THAT THE PROPONOLOL AS ORDERED BY DEFENDANT RIVAS WITHOUT ANY CARDIOLOGIST INPUT ACTED TO ONLY AMPLIFY HER CHEST AND HEART PAINS AND BREATHING DIFFICULTY.

26.   PROVIDING MEDICAL DEFENDANTS AMPLE TIME GIVEN THE "EMERGENT NATURE" TO CONSULT HER WITH A CARDIOLOGIST AND HAVING NOT DONE SO, SHE GRIEVED. WHEN REALIZING THE DEADLY IMPLICATIONS OF PROTRACTED DELAYS IN GRIEVANCE RESPONSES AND THE INABILITY TO REMEDY HER LIFE THREATENING CONDITION TIMELY AND TAKEN INTO ACCOUNT THE LITANY OF CONCERNING AND INSENSITIVE RESPONSES AND STATEMENTS OF NURSE DOE TO HER GRIEVANCES AND MEDICAL REQUESTS SHE, WITH THE ASSISTANCE OF CO-PLAINTIFF HEREIN, INSTI-TUTED DIXON V. MINEV, ET. AL., USDC (D.NEV.) CASE NO. 2:21-CV-02133 APG VCF SEEKING EMERGENT INJUNCTIVE RELIEF. THIS FILED ACTION AND OTHER PROTECTED FIRST AMENDMENT ACTIVITIES ENGAGED IN BY MS. DIXON WITH HER PARALEGAL ASSISTING CO-PLAINTIFF FORMED 1 OF SEVERAL IMPETUS FOR DEFENDANTS RETALIATIONS.

---

3.   ADHERING TO THEIR UNDISCOURAGED PRACTICE AND CUSTOM OF DOING SO NOW HABITUALLY WITHOUT FEAR OF CONSEQUENCE, MEDICAL DEFENDANTS FALSELY DOCTORED AND FORGED MEDICAL RECORDS OF PLAINTIFF TO THE CONTRARY.

27.    ULTIMATELY MS. DIXON WAS CONSULTED BY THE CARDIOLOGIST WHO REALIZING THE FATAL PROSPECTS OF THE PROPONOLOL PRESCRIBED BY UNQUALIFIED DEFENDANT RIVAS, IMMEDIATELY DISCONTINUED IT, PLACED HER ON METROPROLOL AND ORDERED SEVERAL CLINICAL DIAGNOSTIC TESTS INCLUDING TREADMILL, TABLE TILT AND STRESS TESTS AMONG OTHERS. DESPITE THE CARDIOLOGISTS DISCONTINUATION OF THE PROPONOLOL AND PRESCRIBING METROPROLOL IMMEDIATELY UPON THE FIRST CONSULT FOR THE ASSURANCE OF HER HEALTH, DOE NURSE DEFENDANTS AND DEFENDANT RIVAS CONTINUED TO ADMINISTER THE POTENTIALLY DEADLY PROPONOLOL AND FAILED TO BEGIN ADMINISTERING HER THE CARDIOLOGIST ORDERED METROPROLOL FOR IN EXCESS OF 2 WEEKS LATER WHILE HER SYMPTOMS AND COMPLAINTS PERSISTED. THE LIFE THREATENING DELAY IN IMMEDIATELY EXCHANGING THESE DRUGS, WHICH COULD HAVE MARKED THE DIFFERENCE BETWEEN LIFE AND DEATH IN MS. DIXON'S CASE, RESTED ADDITIONALLY IN PART AND FAULT ON THE INCOMPETENT IRRATIONAL, WIDE SPREAD AND DEEPLY ENTRENCHED POLICIES AND PRACTICES OF PHARMACEUTICAL DOES WHO KNOWINGLY PERMIT THESE EGREGIOUS DELAYS WHICH IN AND OF THEMSELVES DEMONSTRATE CALLOUS INDIFFERENCES TO PATIENT HEALTH AND LIFE.

28.    IN NOTIFYING MS. DIXON OF ONE OF THE SCHEDULED TRIAD OF TESTS AND ALTHOUGH COMPLETELY UNQUALIFIED TO DO SO, NURSE DOES ERRONEOUSLY AND TO HER DETRIMENT ASSURED HER THAT SHE COULD TAKE HER HEART MEDICATION ON THE MORNING OF THE MUCH NEEDED PROCEDURE. HOWEVER AND TO THE COMPLETE CONTRARY, REALIZING SHE HAD DONE SO THE SPECIALTY CARDIOLOGIST STAFF CANCELLED HER CRITICALLY NEEDED PROCEDURE SUBJECT TO NURSE DOES RESCHEDULING IT WHICH HAS NOT OCCURRED TODATE CAUSING HER CONTINUING SUFFERING FROM DELAY IN DIAGNOSING, TREATING AND CARING OF HER HEART CONDITION. WHILE ALTHOUGH HER CARDIOLOGIST HAS ORDERED A NEUROLOGY CONSULT AS WELL, TODATE MEDICAL DEFENDANTS HAVE PERSISTED IN DEFYING THIS SPECIALTY ORDER AS WELL.

29.    MS. DIXON HAS CONSISTENTLY AND RELENTLESSLY COMPLAINED OF HER PLIGHTS TO MEDICAL NURSE DOES AND PARTICULARLY HER EXPELLING BLOOD, BLOOD IN HER STOOL, HEART AND CHEST PAINS, DIFFICULTIES BREATHING, EATING AND SWALLOWING, POSSIBLE THROAT AND COLON CANCER?! AND EMPHASIZING THE HISTORY OF CANCER IN HER FAMILY. MEDICAL AND NURSE DOES LACKING EMPATHY OR COMPASSION PROVIDE THE SEMINAL STANDARD BOILERPLATE REPLY; "PLACED ON DR. LIST, YOU WILL BE SEEN WHEN YOUR NAME COMES UP; LIST IS LONG; PLEASE BE PATIENT" EFFECTIVELY DISMISSING HER PAIN, WANTON SUFFERING AND THE PROGRESSION OF POSSIBLE CANCER AND HEART COMPLICATIONS AS "NOT URGENT."

9

30.   MANY EMERGENCY AND REGULAR GRIEVANCES OF MS.
DIXON HAVE NETTED THE SAME RESULTS FROM MEDICAL NURSE
DOES. IN EMERGENCY GRIEVANCES SHE COMPLAINED OF HEART
AND CHEST PAINS, DIFFICULTY BREATHING, POSSIBLE CANCER,
COUGHING UP BLOOD AND BLOOD IN HER STOOL. NURSE
DOES CALLOUSLY WITHOUT EMPATHY, COMPASSION OR THE
SLIGHTEST CONCERN FOR HER SUFFERING AND REPORTED
CONCERNING MEDICAL CONCERNS SIMPLY REPLY "NOT AN
EMERGENCY PER AR 740" 5/. IN AT LEAST 2 EMERGENCY
MEDICAL GRIEVANCE INSTANCES NURSE DOES DIRECTLY
THREATENED MS. DIXON REPERCUSSION, DISCIPLINE AND
REPRIMAND SHOULD SHE CONTINUE TO COMPLAIN AND IN
THEIR EFFORTS TO SILENCE HER.

31.   AS OF THE TIME OF DRAFTING THIS COMPLAINT MEDICAL
DOE DEFENDANTS HAVE NOT SO MUCH AS ORDERED OR OBTAINED
ORDERS FOR, LESS ALONE PERFORMED THE SIMPLEST OF BLOOD
TESTING AND SCREENS AT DETECTING PROGRESSION OF AILMENTS,
CANCERS, HIGH BLOOD PRESSURE OR OTHER DISEASE WHICH MAY
BE THE SUSPECTED CULPRIT OF HER DETERIORATION AND WHICH COULD
SO EASILY SAFEGUARD HER LIFE. TO DATE, MORE THAN 7 YEARS AFTER
HER RETURN FROM CDCR AND DESPITE REPEATED REQUESTS,
MEDICAL DEFENDANTS HAVE STILL NOT CONSULTED HER WITH A
QUALIFIED ENDOCRINOLOGIST.

32.   IN A RECENT EVENT, MS. DIXON REPORTED A "MAN DOWN"
MEDICAL EMERGENCY SUMMON DUE TO INABILITY TO BREATH AND
EXCRUCIATING CHEST AND HEART PAINS. BEING VIEWED AS A NUI-
SANCE BY MEDICAL DOES AND NURSES, SHE WAS MADE TO WAIT
FOR EMERGENCY RESPONSE SOME 1 HOUR AND 9 MINUTES OUT OF
PURE RESENTMENT. PUT INTO PERSPECTIVE, THATS ENOUGH TIME
BY IN WHICH TO FULLY SHACKLE MS. DIXON AND HAVE HER TRANS-
PORTED TO THIS COURT AND HALF WAY BACK TO THE PRISON THAT
IT TOOK MEDICAL DOES TO RESPOND TO A HEART/CHEST PAIN
INABILITY TO BREATH EMERGENCY MEDICAL SUMMON.

---

4.   A CONDITION IN WHICH ANY REASONABLE PERSON OF NORMAL SENSIBILITY
WOULD AGREE WARRANTS "EARLY" NOT DELAYED DETECTION FOR FAV-
ORABLE PROGNOSES.

5.   NO PROVISION IN AR 740 EXPRESSLY DEFINES EXACTLY WHAT CIRCUMSTANCES
CONSTITUTE A EMERGENCY GRIEVABLE ISSUE NOR DOES ANY PROVISION PRECLUDE
VOMITING BLOOD, BLOOD IN STOOL, HEART AND CHEST PAINS, BREATHING DIFFI-
CULTIES OR POSSIBLY PROGRESSIVE CANCER AS BEING CONSIDERED A EMERGENCY
BASIS. NONETHELESS, ABSENT HESITATION AND WITH HASTE MEDICAL
DEFENDANTS INDISCRIMINATELY CITE AR 740 TO CONCEAL THEIR LACK OF
WILLINGNESS IN PROVIDING HUMANE AND CONSTITUTIONAL CARE AND AS
A MEDICAL TREATMENT BUFFER.

10

22-CV99

33    UPON NURSE DOE 1'S ARRIVAL AND IN THE PRESENCE OF DEFENDANT JARRETT AS THE UNIT SUPERVISOR, TERRIFIED AND FRUSTRATED BY THE EXPERIENCE UNDERSTANDABLY SHE BERATED NURSE DOE 1'S GROSSLY TARDY RESPONSE VOWING TO GRIEVE IT. NURSE DOE 1 RESPONDED "THEN YOU'RE REFUSING MEDICAL TREATMENT" BEFORE EXITING COMPLETELY REFUSING MS. DIXON MEDICAL ATTENTION OR EVEN ASSESSING HER. RESULTING NOTES AND REPORTS OF NURSE DOE 1 WERE DOCTORED AND FALSIFIED. SEE FN 3, SUPRA. AS UNIT SUPERVISOR DIRECTLY WITNESSING THIS ABUSE, DEFENDANT JARRETT HAVING THE OPPORTUNITY AND AUTHORITY TO DO SO, HAD A DUTY TO REPORT THIS EGREGIOUS VIOLATION OF NURSE DOE 1'S REFUSAL TO PROVIDE CARE TO MS. DIXON TO DEFENDANTS JOHNSON, WILLIAMS (MATOUSEK), BEAN, PICCININI, ONTIVEROS AND MEDICAL SUPERVISOR DIRECTOR OF NURSING DOES AND SECURE HER THE CARE CONSTITUTIONALLY GUARANTEED. DEFENDANT JARRETT CONSCIOUSLY REFUSED AND FAILED TO DO SO EFFECTIVELY CONCEALING THIS ABUSE AND BEING COMPLICIT IN MS. DIXON'S UNCONSTITUTIONAL DENIAL OF MEDICAL CARE AND IN THE TACIT INFLICTION OF HER WANTON PAIN AND SUFFERINGS.

34.    ON MARCH 31, 2022 MS. DIXON WAS INVOLVED IN A INCIDENT AS SET FORTH IN SECTION 'C.' OF FACTS IN WHICH SHE WAS DETAINED AND REHOUSED IN ADMINISTRATION SEGREGATION. IN CONJUNCTION WITH THOSE EVENTS SHE AND HER CO-PLAINTIFF ALERTED DEFENDANTS JACKSON, LOPEZ-MAYA, STEWART, BARRETT, OBLAK, ASHCRAFT, MARTINEZ GARCIA AND CERTAIN DOES INCLUDING CUSTODY AND NURSE DOES OF VALIDLY PRESCRIBED MEDICATIONS AND APPARATUS' CONTAINED IN HER PROPERTY THESE DEFENDANTS POSSESSED AND HAD ACCESS TO. SHE SOUGHT THEIR RETRIEVAL AND PROVISION TO HER TO PREVENT CONTINUITY OF CARE INTERRUPTION AND THE WANTON SUFFERINGS PREDICTABLE TO BE CAUSED IN THEIR CONTINUED ABSENCES. THESE DEFENDANTS INTERRUPTED AND INTERFERED WITH HER PRESCRIBED CARE BY FAILING TO COME TO HER AID IN RETURNING SAID MEDICATIONS OR BY CAUSING THEIR RETURN. AT THE TIME OF DRAFTING THIS COMPLAINT SHE HAS BEEN REFUSED HER HEART, HRT/HT AND OTHER MEDICATIONS IN HER PROPERTY FOR SOME 17 CONSECUTIVE DAYS ARBITRARILY AND AS RETALIATION AND PURE PUNISHMENT.

35.    AS OF THE CURRENT DATE, MS. DIXON CONTINUES TO SUFFER FROM DETERIORATING HEALTH, WANTON PAIN AND SUFFERING AND HAS NOT YET BEEN SUBJECTED TO CLINICAL INVESTIGATORY TESTS TO RULE OUT HER CAUSES OF BLOOD IN STOOL AND BEING COUGHED UP, CANCER, NECK/BACK PAINS NOR HAS SHE BEEN CONSULTED WITH NEUROLOGY AND ENDOCRINOLOGY.

## B.   MEDICAL TREATMENT OF TONEY WHITE

36.   DIAGNOSED WITH SEIZURE DISORDER AND RECEIVING THE CONTROVERSIAL AED GABAPENTIN SOME 17 YEARS PRIOR TO HIS MARCH 29, 2019 HDSP ARRIVAL, BASED ON A DRACONIAN, INDISCRIMINATE, BIASED AND PROFOUND COMMITMENT TO ERADICATE ITS USE AT HDSP MEDICAL DEFENDANTS DEVISED A "AGENCY PROTOCOL" BLANKETLY EXCLUDING ITS USE WHICH TRIGGERED WHITE V. BEAN, ET. AL., USDC (D. NEV.) CASE NO. 2:21-CV-01259 RFB VCF AND WHITE V. LAUB, ET. AL., 8TH JUD. DIST. CRT. CASE NO. A-21-838811-C, BOTH WHICH REMAIN PENDING TODATE[6]. DUE TO MR. WHITE'S RESORT TO LITIGATION CALLING INTO QUESTION MEDICAL DEFENDANTS DRACONIAN BLANKET POLICY AND HIS UNRELENTING MEDICAL-RELATED GRIEVANCES, MEDICAL DEFENDANTS HAVE BLACK BALLED HIM EMPLOYING MEDICAL PRACTICE AS A TOOL OF AGGRESSION AND TO RETALIATE WHICH SERVED TO BE THE IMPETUS OF THEIR PROFOUND RESENTMENT AND ANIMOSITY AND WHICH DIRECTLY IMPACTS THE QUALITY OF HIS CARE.

37.   OUT OF RESENTMENT AND SPITE, DURING THE COURSE OF JULY 21, 2021 AND JANUARY 31, 2022 AND DESPITE STANDING PHYSICIAN ORDERS PRESCRIBING THE AED GABAPENTIN 1800 MG BID (3600 MG DAILY) A MULTITUDE OF NURSE DOES ACTIVELY AND CAPRICIOUSLY INTERFERRED WITH HIS ORDERED CARE DEFYING STANDING PHYSICIAN ORDERS BY SIMPLY REFUSING TO MEDICATE MR. WHITE ON A SMORGASBORD OF OCCASIONS SENSELESSLY TRIGGERING HIS OTHERWISE PREVENTABLE SEIZURES AND RESULTING INJURIES. WHEN MR. WHITE WOULD COMPLAIN TO NURSE DOES REPORTING THE RESULTING INJURIES SEEKING IMMEDIATE ASSESSMENT AND TREATMENT, NURSE DOES WOULD DELAY AND IN MANY INSTANCES FLAT OUT REFUSE HIM VIEWING HIM, ALIKE MS. DIXON, AS A NUISANCE. ADHERING TO THEIR UNDISCOURAGED PRACTICE AS OUTLINED AT FN 3, SUPRA, RESULTING REPORTS AND MEDICAL FILE ENTRIES WERE DOCTORED AND FALSIFIED IN EFFORTS TO MINIMIZE THE SEVERITY AND GRAVITY OF NURSE DOES INDIFFERENCES AND INSULATE CULPABLE STAFF FROM DETECTION AND LIABILITY FOR THEIR AGGRESSIONS.

---

6.  IN WHITE V. BEAN, SAID CASE CHALLENGED EVENTS FROM MARCH 29, 2019 THRU MARCH 16, 2020; WHITE V. LAUB, CHALLENGED EVENTS FROM MARCH 17, 2020 TO APPROXIMATELY JULY 21, 2021. THE CURRENT ACTION CHALLENGES VIOLATIONS RELATING TO MR. WHITE'S MEDICAL CARE FROM APPROXIMATELY JULY 22, 2021 THRU ITS FILE DATE.

22-C099

38. BY NOVEMBER 05, 2021 IT WAS COMMON KNOWLEDGE AMONGST MEDICAL DEFENDANTS THAT MR. WHITE WAS IN FULL PROSECUTION OF WHITE V. BEAN ACTIVELY EXPOSING THE CORRUPTION, INDIFFERENCE AND COMPETENCY OF HDSP's MEDICAL DEPARTMENT. ELABORATE SCHEMES BEGAN TO UNRAVEL CALCULATED TO UNDERMINE THE CREDIBILITY OF MR. WHITE'S OTHERWISE LUCID REPORTS AND PUNISH HIM THROUGH RETALIATION FOR DOING SO. ON NOVEMBER 05, 2021 NURSE DOE 2 FRAUDULENTLY ACCUSED MR. WHITE OF DOUBLE-DOSING. WHEN MR. WHITE CONFRONTED THE NURSES BLATANT DECEPTION AND CONCOCTED ALLEGATION AND VOWED TO GRIEVE HIM NURSE DOE 2 DISPELLED BEING CONCERNED ABOUT MR. WHITE'S LAWSUIT OR A GRIEVANCE.

39. DAYS LATER MR. WHITE'S AED GABAPENTIN WAS PURPOSEFULLY WITHHELD IN THE MORNING HOURS IN TURN PROMPTING A VIOLENT SEIZURE WITNESSED BY DEFENDANTS JARRETT AND ONTIVEROS AFTER 11:00 AM. ONLY THEN DID NURSE DOES RESPOND AND MEDICATE MR. WHITE. WHILE ALTHOUGH HE FILED A SERIES OF GRIEVANCES AND MEDICAL REQUESTS AND DEFENDANTS ONTIVEROS, JARRETT, WILLIAMS, LOPEZ-MAYA, BARRETT AND ABEL AND OTHER DOES WERE AWARE OF MEDICAL DEFENDANTS ABUSIVE PRACTICES WHICH CONTINUED TO POSE A SIGNIFICANT, CLEAR AND PRESENT DANGER TO MR. WHITE'S HEALTH AND LIFE CAUSING WANTON SUFFERINGS. IN THEIR VIEWS THESE UNCONSTITUTIONAL ATROCITIES WERE THE REALITIES AND CONSEQUENCES OF PRISON AND WAS SIMPLY BUSINESS AS USUAL. EACH OF THESE DEFENDANTS AWARE OF THE DIRE CIRCUMSTANCES CONFRONTING MR. WHITE FAILED TO COME TO HIS AID AND DESPITE HAVING THE OPPORTUNITY AND AUTHORITY TO DO SO, CONSCIOUSLY FAILED TO INTERVENE BY CONTACTING SUPERVISOR MEDICAL DEFENDANTS, DEFENDANT JOHNSON OR OTHERS TO ENSURE MR. WHITE REMAINED RECEIVING CONSTITUTIONAL CARE AND THAT NURSE AND MEDICAL DOES PRACTICES CEASED FOR THE PRESERVATION OF MR. WHITE'S LIFE AND SAFETY. RATHER THAN REPORTING THESE DISTURBING ABUSES CANDIDLY, THEY IN FACT CONCEALED THEM TURNING A BLIND EYE ACTIVELY ORDAINING AND REMAINING COMPLICIT IN THEM.

13

22-0099

40.   BY DECEMBER 23, 2021 ANIMOSITY AND RESENT-MENT AGAINST MR. WHITE FESTERED AMONGST MEDICAL DEFEN-DANTS ESPECIALLY FOLLOWING THE FEDERAL COURTS NOVEM-BER 19, 2021 ADMONISHMENT IN WHITE V. BEAN AND STERN THREAT OF CASE DISPOSITIVE SANCTIONS IN THE EVENT MEDICAL DEFENDANTS CONTINUED SABOTAGING MR. WHITE'S AED GABAPENTIN. ON THIS DATE DEFENDANTS BERNALES 7/., RIVAS AND VIZCARRA-RODRIGUEZ OPTED WILLINGLY INTO A FRAUDULENT CONSPIRATORY SCHEME AIMED AT CREATING FALSE PRETEXTS TO JUSTIFY REMOVING MR. WHITE FROM HIS AED GABAPENTIN TO DIVEST THE FEDERAL COURT OF JURISDICTION AND INSULATE THEMSELVES FROM THE WRATH OF ITS CONTEMPT FINDINGS AND IMPLEMENTION OF CASE DISPOSITIVE SANCTIONS.

41.   AS PRACTICAL, THE SCHEME INCLUDED DEFENDANT VIZCARRA-RODRIGUEZ FALSELY ACCUSING MR. WHITE OF HOARD-ING HIS GABAPENTIN IN THE A.M. ON DECEMBER 23, 2021 BY IN WHICH TO JUSTIFY DEFENDANTS RIVAS AND BERNALES' ORDER TO DISCONTINUE MR. WHITE'S GABAPENTIN. BASED ON THE FANCIFUL EVENTS FALSE ENTRIES WERE MADE IN MR. WHITE'S MEDICAL FILE PURPORTING TO JUSTIFY A CONCOCTED BASIS TO RELIEVE HIM FROM HIS AED GABAPENTIN WHEN IN ALL ACTUALITY AND FACT THE ADVERSE MEDICAL ACTION WAS MUCH MORE SINISTER, — NAMELY TO PUNISH HIM, CAUSE HARM AND SUFFERING AND ADVANCE THEIR "AGENCY PROTOCOL" OF ERADICATING THE MEDICATIONS USE AT THE FACILITY. A ORDER WAS ENTERED BY DEFENDANT BERNALES AT 0800 HOURS DECEMBER 23, 2021 TO ADMINISTER 1800 MG IN THE A.M. AND 1200 MG IN THE P.M. TO "TAPER" MR. WHITE OFF OF HIS GABAPENTIN. UPON THE FRAUDULENT TAPERING MR. WHITE BEGAN A LITANY OF COMPLAINTS AND SUFFERED SEVERAL OTHERWISE PREVENTABLE SEIZURES. HIS MEDICAL KITES AND COMPLAINTS WERE REBUFFED.

42.   ON JANUARY 11, 2022 AMONGST OTHER DAYS MR. WHITE SUFFERED A SERIOUS SEIZURE EPISODE TERRI-FYING MS. DIXON WHO CALLED "MANDOWN". AMONG OTHERS DEFEN-DANT JARRETT RESPONDED OBSERVING THE SEVERITY OF MR. WHITE'S SEIZURE EPISODE. DEFENDANT ONTIVEROS, PRES-ENT IN THE UNIT TOWER, WAS ALSO NOTICED OF THE SEVERITY OF PLAINTIFF WHITES SEIZURE EPISODE.

---

7.  WHO DISHONESTLY GAINED NDOC EMPLOYMENT THROUGH FRAUDULENT JOB APPLICATION ENTRIES AND WHO HAD AT LEAST 5 PUBLIC REPRIMANDS FOR VIOLATIONS OF THE MEDICAL PRACTICES ACT MADE AVAILABLE FOR PUBLIC VIEWING ON THE NEVADA BOARD OF MEDICAL EXAMINERS WEBSITE.

22-0099                                    14

43.     ALTHOUGH ALERTED TO MR. WHITE'S MEDICAL EMERGENCY, MEDICAL DOES TREATED HIM AS A NUISANCE FAILING TO COME TO HIS AID FOR SOME 32 MINUTES. BOTH DEFENDANTS JARRETT AND ONTIVEROS FOUND THIS RESPONSE TIME ACCEPTABLE APPARENTLY BECAUSE NEITHER REPORTED IT TO SUPERVISING MEDICAL DEFENDANTS OR HDSP ADMINISTRATORS TURNING A BLIND EYE TO THE INDIFFERENCE TO MR. WHITE'S DETRI- MENT WHICH ONLY EMBOLDENED THE ABUSIVE MEDICAL NURSE DOE OFFENDERS AND MADE ONTIVEROS AND JARRETT COMPLICIT. THE RESULTING REPORT AGAIN LIKE MANY OTHERS WAS DOCTORED AND FALSIFIED TO MINIMIZE AND CONCEAL THE DEPLORABLE CONDUCTS. RATHER THAN HONESTLY REPORTING THE 32 MINUTE RESPONSE DELAY, NURSE DOES FALSELY DOCUMENTED RESPONDING IN 2 MINUTES.

44.     AFTER TAKING MR. WHITE TO THE CLINIC HE CONSENTED TO A PROLACTIN BLOOD DRAW TO CONFIRM SEIZURE ACTIVITY. IT WAS DRAWN EARLY NOON/AFTERNOON SAID DATE. AGAIN DURING THESE INTERACTIONS NURSE DOES REFERENCED THE WHITE V. BEAN LITIGATION. AS A PRETEXT TO JUSTIFY REMOVING HIM FROM HIS GABAPENTIN DEFENDANT RIVAS ENTERED ADDITIONAL FALSE MEDICAL FILE ENTRIES SUGGESTING MR. WHITE WAS FAKING HIS SEIZURES DIAG- NOSING MR. WHITE WITHOUT EVEN EVALUATING HIM WITH "PSUEDOSEIZURES."

45.     ON FEBRUARY 05, 2022 DEFENDANT RIVAS SUMMONED MR. WHITE TO A DOCTOR VISIT. REFUSING TO DISCUSS ANY OF MR. WHITE'S MEDICAL CONCERNS DEFENDANT RIVAS UTILIZED THIS ENCOUNTER AS A PLOY AND PRETEXT IN EFFORTS TO INFLUENCE MR. WHITE TO ABANDON WHITE V. BEAN ASSURING HIM THAT IF HE DID SO "THEY" (MEDICAL DEFENDANTS) WOULD "CONSIDER" RETURNING HIM TO HIS GABAPENTIN. INFORMING MR. WHITE THAT DR. BERNALES WAS A CLOSE FRIEND AND THE MEDICAL COMMUNITY A TIGHT KNIT COMMUNITY, RIVAS ASSURED MR. WHITE IF HE DID NOT ABANDON HIS LITIGATION THAT MEDICAL DEFENDANTS WOULD CONTINUE ENGAGING IN "CREATIVE WRITING" TO DEFEAT THE CLAIMS. DISGUSTED BY THE PROPOSITION MR. WHITE EXITED THE ENCOUNTER ADVISING DEFENDANT RIVAS THAT HE WOULD MEET HIS DEMISE RATHER THAN SUCCUMB TO SAID PRESSURES.

46.     AGAIN ON FEBRUARY 22, 2022 MR. WHITE SUFFERED ANOTHER SEIZURE TO WHICH A NURSE DOE RESPONDED BELATEDLY AGAIN REFERENCING WHITE V. BEAN. RESULTING REPORTS OF THIS CONTACT WERE FALSIFIED AS WELL.

15

22-CC99

47.   BY FEBRUARY 01, 2022 MR. WHITE HAD BEEN COM-
PLETELY REMOVED FROM HIS GABAPENTIN WITHOUT ANY
TAPERING AND COLD TURKEY. IN FACT FROM DEFENDANT
BERNALES DECEMBER 23, 2021 ORDER THRU MR. WHITE'S
FINAL ADMINISTERED DOSAGE  HE WAS PROVIDED
1800 MG IN THE A.M. AND 1200 MG IN THE P.M.
WHICH CREATED ADDITIONAL SUFFERINGS AND SYMPTOMS
CLEARLY CAUTIONED AGAINST ON THE PILL WARNING
LABEL.

48.   THRU MANY CLINICAL CONTACTS MR. WHITE WOULD CON-
VEY TO DEFENDANT ABEL THE ATROCITIES OF MEDICAL DEFEN-
DANTS, THEIR ARBITRARY INTERFERENCE WITH HIS SEIZURE
MEDICATION GABAPENTIN AND THE ONGOING SUFFERING. HAV-
ING THE AUTHORITY AND OPPORTUNITY TO CONTACT MEDICAL
DOE SUPERVISORS OR PRISON ADMINISTRATORS TO REPORT
THE ABUSE PROTECT MR. WHITE AND PREVENT HIS SUFFER-
ING AND TORMENT, DEFENDANT ABEL FAILED TO DO SO
TURNING A BLIND EYE TO HIS ABUSES AND SUFFERINGS
PERMITTING THEM TO CONTINUE AND REMAINING COM-
PLICIT IN THEM. DEFENDANTS RIVAS AND BERNALES WENT
TO SUCH EXTREMITY AND DEGREE TO DECEIVE AND FALSELY
JUSTIFY THE OTHERWISE MALICIOUS DISCONTINUATION OF
MR. WHITE'S GABAPENTIN THAT THEY KNOWINGLY PROVIDED
PERJURIOUS AND FACTUALLY MISLEADING FALSE DECLARATIONS
TO THE FEDERAL COURT IN WHITE V. BEAN IN WHICH THEY
OPENLY DEFAMED AND SLANDERED MR. WHITE AND ENGAGED
IN LIBEL FOR THE PUBLIC AT LARGE TO SEE. WHEN MR.
WHITE WAS FORTUNATE ENOUGH TO PROMPT CUSTODY SUPER-
VISORS TO INQUIRE TO MEDICAL DEFENDANTS AS TO THE
DISPARITY IN HIS TREATMENT, MEDICAL AND NURSE DOES
JUSTIFICATIONS WOULD SUBSTANTIALLY FLUCTUATE TO PUR-
POSEFULLY MISLEAD THEM.

49.   IN LATE OCTOBER OR NOVEMBER 2021, MR. WHITE
WAS BRUTALLY ATTACKED IN WHICH HE BROKE HIS LEFT
HAND, HAD ORAL INJURIES AND A LARGE STAB WOUND
IN HIS BACK FROM A INMATE MANUFACTURED WEAPON. HE
REPORTED SUCH TO NURSE DOES SEEKING EMERGENCY
TREATMENT AND WOUND CARE AND WAS DENIED. HIS COM-
PLAINTS FELL ON DEAF EARS. AS A RESULT HE WAS MADE
TO SUFFER FROM A BONE BREAK TO HIS LEFT HAND AND
INFECTED STAB WOUND WHICH HE WAS MADE TO SELF
STERILIZE AND TREAT WITH TOILET PAPER AND
VASALINE.

22-0099

50.     ALTHOUGH ORDERED TO BE TAKEN INDEFINITELY BY COCCI SPECIALISTS TO CONTROL HIS POTENTIALLY DEADLY COCCI INFECTION MEDICAL DOES HAVE CONSISTENTLY INTERRUPTED HIS TREATMENT REGIMEN OF POSOCONALE REFUSING TO ORDER AND PROVIDE IT TIMELY CAUSING FLUCTUATING PROGRESSES OF HIS PAINFUL INFECTION ALSO ATTRIBUTABLE TO PHARMACEUTICAL DOES AS ALLEGED IN PARAGRAPH 27, SUPRA.

51.     ON MARCH 31, 2022 AS ALLEGED BY MS. DIXON IN PARAGRAPH 34, SUPRA, MR. WHITE WAS ALSO INVOLVED IN A INCIDENT AND WAS JOINTLY DETAINED WITH MS. DIXON AND SUBSEQUENTLY REFUSED IN ADMINISTRATIVE SEGREGATION. IN CONJUNCTION WITH SAID EVENTS MR. WHITE ALIKE MS. DIXON ALERTED DEFENDANTS JACKSON, LOPEZ-MAYA, STEWART, BARRETT, OBLAK, MARTINEZ AND CERTAIN DOES INCLUDING CUSTODY AND NURSE DOES OF VALIDLY PRESCRIBED MEDICATIONS AND APPARATUS' CONTAINED IN HIS PROPERTY THESE DEFENDANTS POSSESSED AND HAD ACCESS TO INCLUDING HIS POSOCONAZOLE, PRESCRIPTION EYE WEAR, LEFT WRIST BRACE, ACE WRAP AND ASTHMA INHALER, HE SOUGHT THEIR RETRIEVAL AND PROVISION TO HIM TO PREVENT INTERRUPTIONS OF HIS CONTINUITY OF CARE AND WANTON SUFFERING PREDICTABLE TO RESULT WITHOUT THEM. HIS REQUEST WAS FURTHER TO ACCOMMODATE HIS DISABILITIES. THESE DEFENDANTS INTERRUPTED AND INTERFERED WITH HIS PRESCRIBED CARE AND FAILED TO ACCOMMODATE HIS DISABILITIES BY FAILING TO COME TO HIS AID IN RETURNING THESE MEDICAL MATERIALS OR BY CAUSING THEIR RETURN. AT THE TIME OF DRAFTING THIS COMPLAINT MR. WHITE HAS BEEN REFUSED THESE MEDICATIONS AND DEVICES FOR SOME 177 DAYS ARBITRARILY AND AS RETALIATION AND PURE PUNISHMENT.

52.     MR. WHITE HAS SUBMITTED MULTIPLE MEDICAL REQUESTS TO MEDICAL DEFENDANTS TO NO AVAIL. HIS PLEAS HAVE FALLEN ON DEAF EARS. AS OF THE FILE DATE OF THIS ACTION HE HAS INCURRED TERRIFYING (AND IN 1 INSTANCE A NEAR DEADLY) ASTHMA ATTACK(S) AND SEIZURES, HAS REMAINED WITHOUT HIS LEFT WRIST SUPPORT BRACE, GLASSES, ACE WRAP, COCCI MEDICATION AND ASTHMA INHALER. HE HAS FILED A SMORGASBORD OF EMERGENCY AND REGULAR GRIEVANCES AND SIMILAR TO MS. DIXON'S RESULTS ALLEGED AT PARAGRAPH 30, SUPRA, RECEIVED THE SAME RESPONSE "NOT AN EMERGENCY PER AR 740." MOREOVER, ALTHOUGH AWARE OF HIS SEIZURE CONDITION DEFENDANTS HAVE INDIFFERENCED HIS LIFE BY FAILING TO PERMIT JOINT OCCUPANCY OF A CELL WITH A LIKE PC INMATE CAPABLE OF MEDICAL EMERGENCIES DURING SEIZURE EPISODES THAT RENDER MR. WHITE INCAPABLE FROM DOING SO HIS SELF.

## 1.   EGG ALLERGY

53.   IN EXCESS OF 26 YEARS FAR PRIOR TO HIS MARCH 29, 2019 NDOC ARRIVAL, MR. WHITE HAS REPORTED HIS EGG ALLERGY. SOMETIME IN 2019 NDOC AT HDSP REVISED ITS MEAL MENU WHICH EACH MORNING 7 DAYS WEEKLY PROVIDES INMATES EGGS FOR BREAKFAST.

54.   MR. WHITE COMPLAINED TO NURSE DOES OF HIS ALLERGY AND THE DAILY EGG FEEDING ADVISING OF HIS INABILITY TO CONSUME EGGS, LOSS OF WEIGHT AND FOR HIS NEED OF A MEDICALLY ORDERED SUPPLEMENTARY DIET. NURSE DOES FALSELY DENIED THAT THERE WAS ANY ENTRY IN MR. WHITE'S MEDICAL FILE AS SUPPORTING HIS EGG ALLERGEN DESPITE HIS PROVISION OF MEDICAL DEFENDANTS WITH SOME 4000 PAGES OF HIS MEDICAL HISTORY DATING BACK TO 1992 AND THE EGG ALLERGY INDEED A PART OF HIS MEDICAL FILE CONTRARY TO NURSE DOES FALSE CONTENTION.

55.   AS A RESULT OF CASE DISPOSITION WITH METRO DEFENDANTS IN WHITE V. COUNTY OF CLARK, ET. AL., USDC (D. NEV.) 2:18-CV-00734 RFB VCF HE HAS REMAINED FORTUNATE ENOUGH TO PURCHASE COMMISSARY ABUNDANCE TO ENSURE HIS ADEQUATE NUTRITIONAL INTAKE ESSENTIALLY EXPENDING HIS OWN MONEY ON NUTRIENTS THE STATE BY LAW OTHERWISE HAS A INFLEXIBLE DUTY, OBLIGATION AND RESPONSIBILITY TO PROVIDE.

56.   GIVEN HIS CURRENT SEGREGATION STATUS DERIVING FROM THE MARCH 31, 2022 INCIDENT, INABILITY TO ORDER COMMISSARY AND GIVEN DEFENDANTS GARCIA, SALKOFF, ASHCRAFT, JACKSON AND LOPEZ-MAYA'S SEIZURE OF HIS COMMISSARY POSSESSED IN CELL PRIOR TO HIS SEGREGATION PLACEMENT AND ITS CONTINUED RETENTION AND WHICH SINCE HAS NOT BEEN PROVIDED, HALF OF MR. WHITE'S DAILY CALORIE INTAKE AND NUTRIENTS, DUE TO HIS EGG ALLERGY, HAVE BEEN PROVIDED SINCE MARCH 31, 2022 DUE TO MEDICAL DEFENDANTS REFUSAL TO SUPPLEMENT SAID MEAL IN TURN CONSTITUTING CORPORAL PUNISHMENT AND DELIBERATE INDIFFERENCE.

ZZ-C099

## 2.    WHITE'S DENTAL

57.    MID TO LATE 2021 MR. WHITE BEGAN REPORTING A RAPIDLY PROGRESSING, SIGNIFICANTLY PAINFUL AND SPREADING INFECTION IN HIS FRONT TOOTH SEEKING EMERGENCY DENTAL ATTENTION. DENTAL DOES IGNORED THE URGENCY OF THE REQUESTS PERMITTING THE AGGRESSIVE SPREAD OF THE ABCESS FOR MONTHS PROMPTING HIM INTO BARBARIC MACABRE OF SELF EXTRACTING THE TOOTH TO PREVENT ITS INFECTIOUS SPREAD TO HIS BRAIN. SOME SUBSTANTIAL AMOUNT OF TIME LATER DENTAL DOES SUMMONED MR. WHITE PURPORTEDLY TO ADDRESS THE DENTAL CONCERN ONLY TO DISCOVER HIS SELF EXTRACTION OF THE TOOTH. DOE DENTAL DEFENDANTS PROVIDED MR. WHITE A X RAY AND COMMENDED HIM FOR SUCCESSFULLY EXTRACTING THE ENTIRE TOOTH INCLUDING ROOTS ESSENTIALLY DOING THEIR JOB FOR THEM. MR. WHITE RETAINED THE ENTIRE TOOTH AS EVIDENCE UNTIL THIS EVIDENCE WAS SPOLIATED AND DESTROYED BY CUSTODY DEFENDANTS AS ALLEGED IN PARAGRAPH 97, INFRA.

58.    FOLLOWING THE DISCONTINUATION OF MR. WHITE'S SEIZURE MEDICATION GABAPENTIN ON JANUARY 31, 2022 THRU THE CURRENT DATE HE HAS CONSISTENTLY SUFFERED FROM MULTIPLE SEIZURES WHICH HAS KNOCKED OUT 2 TEETH FILLINGS PAINFULLY EXPOSING TOOTH NERVES. HE RELENTLESSLY TODATE COMPLAINED OF THE TREMENDOUS PAINS AND INABILITY TO PROPERLY EAT, DRINK OR SLEEP AND SOUGHT EMERGENCY DENTAL CARE TO MEDICAL AND DENTAL DOES TO NO AVAIL. HIS CONCERNS AS OF THE CURRENT DATE HAVE REMAINED IGNORED AND HIS UNBEARABLY PAINFUL DENTAL CONDITION UNATTENDED TO. MR. WHITE RETAINED THE ACTUAL DISLODGED TOOTH FILLINGS AS EVIDENCE UNTIL THIS EVIDENCE TOO WAS SPOLIATED AND DESTROYED BY CUSTODY DEFENDANTS AS ALLEGED IN PARAGRAPH 97, INFRA.

## 3.    PSYCHIATRIC MEDICATIONS

59.    IN EXCESS OF 30+ YEARS MR. WHITE HAS BEEN DIAGNOSED WITH AND SUFFERING FROM AMONGST OTHER MENTAL HEALTH AILMENTS AND DISABILITIES PARANOID SCHIZOPHRENIA, GRAVE DEPRESSION, PTSD, SUICIDE IDEATION, HALLUCINATIONS AND OTHER PSYCHOTIC DISORDERS IRREFUTABLY CATEGORIZED AS "SERIOUS MENTAL ILLNESS" UNDER DEFENDANTS AR/OP 707. SOME REQUIRING HOSPITALIZATION IN MENTAL HEALTH FACILITIES.

22-0099

60.   DURING THIS SAME INTERVAL MR. WHITE HAS SUCCESSFULLY CONTROLLED AND MANAGED ERRATIC PSYCHOTIC IMPULSES, BEHAVIORS AND OUTBURSTS WITH A CATALOG OF EXTREMELY POWERFUL ANTI-PSYCHOTIC DRUGS INCLUDING THORAZINE, MELERIL, SENAQVAN, SEROQUIL, ZOLOFT, PROZAC, LITHIUM, ELAVIL, VISTERIL, APATANE, PROLIXYN, WELLBUTRIN, HALDOL, COGENTIN, EFFEXOR, ATIVAN AND WAS IN SOME INSTANCES UNDER FORCED MEDICATION BY COURT ORDER TO ENSURE HIS AND THE SAFETY OF OTHERS.

61.   LEADING UP TO THE CURRENT DATE MR. WHITE HAS REMAINED PRESCRIBED AT RATHER STRONG DOSAGES THE EXTREMELY POWERFUL ANTI-PSYCHOTIC HALDOL AT 15 MG AM AND 10 MG PM, COGENTIN AND ZOLOFT. ADHERING TO THEIR EMBEDDED, ACCEPTABLE AND NON-DISCOURAGED PRACTICES AT HDSP, MEDICAL DEFENDANTS AWAIT FOR A PATIENTS PHARMACY PILL BOTTLE TO COMPLETELY DEPLETE PRIOR TO REORDERING A REFILL WHICH IN TURN INTERRUPTS THE PATIENTS MEDICATION CONTINUITY WITH COMPLETE INDIFFERENCE. IN MANY INSTANCES AND DUE TO PHARMACEUTICAL DOES COMPLICITIES AS ALLEGED IN PARAGRAPH 27, SUPRA, IT TAKES 14-21 DAYS TO REFILL A PATIENTS MEDICATIONS DESPITE HAVING STANDING PRESCRIPTIONS AND EFFECTIVELY INTERFERING WITH A PATIENTS MENTAL OR MEDICAL STABILITY AND CAUSING CONCERNING DECOMPENSATION.

62.   SHORTLY PRIOR TO MARCH 31, 2022 AND THRU APRIL 11, 2022 MR. WHITE HAD REMAINED UNACCEPTABLY UNMEDICATED WITH HIS MUCH NEEDED ANTI-PSYCHOTIC MEDICATION HALDOL AND COGENTIN. THE ABSENCE OF HIS MEDICATIONS IN THE DAYS LEADING UP TO MARCH 31, 2022 CONTRIBUTED SUBSTANTIALLY TO HIS ERRATIC PSYCHOTIC BEHAVIOR AND THE MANNER IN WHICH HE PERCEIVED AND REACTED TO A THREAT WHICH WAS ONLY COMPOUNDED BY THE INSTIGATING AND INCITING OFFICERS IDENTIFIED IN SECTION 'C' OF FACTS, INFRA.

63.   PRIOR TO MARCH 31, 2022 MR. WHITE MET WITH AND PLED WITH DEFENDANT ABEL TO CORRECT SAID CONCERNING ISSUE AND ENSURE ADEQUATE MEDICATIONS AT THE TIMES AND DOSAGES PRESCRIBED, WHILE ALTHOUGH SHE VOWED TO CORRECT THE ERROR SHE FAILED TO DO SO. THE SAME RESULTS FOLLOWED HIS MARCH 31, 2022 ADMINISTRATIVE SEGREGATION PLACEMENT WHEN ON APRIL 07, 2022 HE APPEALED TO DEFENDANT CONNOR FOR ASSISTANCE AND WAS BERATED. THE FOLLOWING DAY HE GRIEVED ON EMERGENT BASIS ONLY TO BE PROVIDED A COMPLETELY NON-RESPONSIVE AND INSENSITIVE REPLY TO HIS CONCERNS BY NURSE DOE 1.

20

22-0099

64.     WHILE MR. WHITE CONTINUED TO DECOMPENSATE SUFFERING MENTAL ANGUISH, FEAR, ANXIETY, DEPRESSION, PARANOIA AND ENDURE PSYCHOLOGICAL TORMENT AND TORTURE FROM VOICES AND VISIONS, MEDICAL, NURSE DOES AND DEFENDANTS ABEL AND CONNOR DEMONSTRATED TO BE COMPLETELY INSENSITIVE AND CALLOUSLY INDIFFERENCE TO SUCH DESPITE MR. WHITE'S NUMEROUS NOTED SUICIDE ATTEMPTS.

C.    FAILURE TO PROTECT, CELL SEARCHES AND OTHER CONDITIONS

65.     MR. WHITE ARRIVED TO HDSP FROM ESP FOR FEDERAL COURT IN WHITE V. COUNTY OF CLARK ET. AL. IN NOVEMBER 2019 AND ON OR ABOUT DECEMBER 17, 2019 WAS HOUSED IN UNIT 11 F-POD WHERE HE REMAINED HOUSED THRU MARCH 31, 2022. TYPICALLY, INMATES HOUSED IN PROTECTIVE CUSTODY, WHICH IS DESIGNATED AS UNITS 9 THRU 12 AT HDSP, HAVE BEEN PLACED FOR PROTECTION DUE TO SENSITIVE CASE FACTORS SUCH AS CHILD SEX CRIMES OR OTHER DEVIANT SEXUAL OFFENSES OR FOR "SNITCHING" ON FELLOW INMATES ON THE PRISONS GENERAL POPULATION AND WHO WISH TO DO THEM HARM. MR. WHITE'S PLACEMENT FITTED NEITHER CATEGORY. IN FACT, HE SOLELY OPTED FOR PC HOUSING TO AVOID PRISON POLITICS, FOCUS ON HIS CRIMINAL APPEALS, EXPAND HIS PROGRAMMING OPTIONS AND INCREASE HIS CHANCES OF SUCCESS IN OBTAINING PAROLE.

66.     OVER THE COURSE OF HIS RESIDENCY IN F-POD, MR. WHITE WITNESSED FIRSTHAND THE EMERGENCE AND CULTIVATION OF A CULTURE AND ENVIRONMENT, NAMELY A SNITCH-REWARD SYSTEM, IN WHICH FELLOW PRISONERS WOULD PROVIDE SNITCH INFORMATION WHETHER TRUE OR EXAGGERATED, WHICH WAS ROUTINELY RECEIVED WITH BLANKET ACCEPTANCE BY STAFF AND MORE PARTICULARLY DEFENDANTS OLIVEROS, BARRETT, JARRETT, ASHCRAFT, LOPEZ-MAYA, TORRES, WILLIAMS, SALKOFF, SANCHEZ, OBLAK, MARTINEZ AND OTHER DOES. THESE DEFENDANTS WOULD IN TURN AWARD THE SNITCH INMATE HIGHER CREDIBILITY, PREFERENTIAL TREATMENT AND STAFF PROTECTION OVER OTHER PRISONERS GIVING THE SNITCH ELITE CLASS A FALSE NOTION AND SENSE OF HAVING CONTROL, STATUS AND POWER OVER THE TYPICAL INMATE.

67.     PRIOR TO MS. DIXON'S NOVEMBER 2021 ARRIVAL TO UNIT 11 CELL F4, DEFENDANTS PRACTICE EXPANDED INTO A BROADER SCHEME IN WHICH DEFENDANTS ONTIVEROS, BARRETT, JARRETT, ASHCRAFT, LOPEZ-MAYA, TORRES, WILLIAMS, SALKOFF, SANCHEZ, OBLAK, MARTINEZ AND OTHER DOES WOULD HAND-PICK THEIR INMATE WORKERS ARMING THEM WITH THE ESSENTIAL INFORMATION GATHERING TOOL MOBILITY AGAINST OTHERS TO OBTAIN INFORMATION.

21

22-0099

68.    ADVANCING THIS FOSTERED CULTURE DEFENDANTS HIRED MICHAEL "JOJO" DOMINGUEZ, DEANDRE "DRE" HARRIS, DEVONTE "DEE/DEON" JAMES, CHRIS BECK, KERRY "SHUG" JOHNSON, JEFFREY "LV" LEE, JEREMY "TEX" BRYSON, RAYMOND "RAY" FERNANDEZ AND KENNETH "KEN" DIVENS AMONGST OTHERS. MANY OF THESE REPUTED RATS LEARNED TO MANIPULATE DEFENDANTS DEPENDENCY ON THEIR INFORMATIONS TO THEIR ADVANTAGE. ACCUSTOMED TO PLACING THEIR LIFE-LINE OF INFORMATION GATHERING ON THE BACKS OF THESE AND OTHER SNITCH INMATES, DEFENDANTS HEAVILY RELIED ON THESE INDIVIDUALS AND WERE LESS LIKELY TO DISCIPLINE OR DISPOSE OF THEM OUT OF FEAR OF INFORMATION SHUT OUT AND IRRESPECTIVE OF THE MOST EGGREGIOUS OF OFFENSES COMMITTED.

69.    TO ENSURE THE CONTINUITY OF INFORMATION GATHERING, DEFENDANTS INSULATED THESE INMATES FROM ACCOUNTABILITY FOR THEIR ACTS BREEDING AND FOSTERING A CULTURE AND CLIMATE OF IMPUNITY TO THE DETRIMENT OF AND AT THE SAFETY AND EXPENSE OF MANY OTHER ADVERSELY AFFECTED INMATES SUBJECT TO SCHEMATICS INCLUDING PLAINTIFFS. THE COTERIE OF HAND-PICKED ELITES ALSO LEARNED TO UTILIZE THIS WIELDED POWER TO AVENGE ADVERSARY INMATES THEY DESPISED, FEARED, DISLIKED OR FOR WHATEVER REASON ENVIED INCLUDING BOTH PLAINTIFFS. TO THIS END THEY WOULD CONCOCT FALSE INFORMATIONS PRESENTING IT TO DEFENDANTS AS RELIABLE TO MANIPULATE FAVORITISM, BENEFITS, REWARDS OR THE GRATIFICATION OF HAVING AN ADVERSARY INMATES BELONGINGS AND CELL DESECRATED.

70.    PRIOR TO AND CONTEMPORANEOUS WITH MS. DIXONS 11 F4 RESIDENCY, MANY OF THESE SNITCH INMATES WERE DISCOVERED TO BE PARTAKING IN DEVIANT PREDATORY SEXUAL ACTS WITH OTHERS AND UNDER SHIELD OF SNITCH IMMUNITY UTILIZING THEIR WORKER MOBILITY CARD WITH IMPUNITY. NAMELY, INMATE JEREMY BRYSON WHILE DEFENDANTS WORKER WAS DISCOVERED IN TRANSGENDER MIAMOR BANKS CELL OVERNITE ENGAGED IN SEXUAL ACTS. HE WAS FIRED THEN REHIRED. MICHAEL DOMINGUEZ WAS DISCOVERED IN AN AFFAIR WITH TRANSGENDER MONICA SALAZAR ENTERING JANITORIAL CLOSETS FOR SEXUAL AFFAIRS AND GROPINGS. HE WAS FIRED AND REHIRED. DEANDRE HARRIS WAS DISCOVERED PIMPING TRANSGENDER MIAMOR BANKS AND SELLING SPICE. HE WAS FIRED AND REHIRED ONLY TO GET DISCOVERED IN TRANSGENDER MARIAH ACOSTAS CELL ENGAGED IN SEX ACTS AND WAS AGAIN FIRED AND REHIRED. INMATE DEVONTE JAMES WAS CONSISTENTLY REPORTED TO BE USING HIS STATUS FOR SEXUAL ENCOUNTERS WITH TRANSGENDER TARA RHONE. AWARE OF SUCH DEFENDANTS' BARRETT, ONTIVEROS, SANCHEZ, ASHCRAFT AND OTHERS TURNED A BLIND EYE TAKING NO ACTION.

71.    THE ATMOSPHERE OF SEXUAL ABUSE BECAME THE NORM AND ACCEPTABLE AMONGST DEFENDANTS AND VICTIMIZED INMATES WERE RELUCTANT REPORTING IT OUT OF FEAR OF STAFF AND INMATE REPRISALS AND COVER UPS TO CONCEAL IT WHICH SPARED DEFENDANTS THE EMBARASSMENT AND EXPOSURE AND INTIMIDATED VICTIMS INTO VIOLENCE. FOLLOWING HIS UNIT 11 FIRING, INMATE DOMINGUEZ RELOCATED TO UNIT 10. THERE, DEFENDANTS ASHCRAFT, BARRETT, SANCHEZ AND ONTIVEROS REHIRED HIM ON THE PAINT CREW. KNOWLEDGEABLE TO DEFENDANTS BARRETT, ONTIVEROS, ASHCRAFT, JOHNSON, SANCHEZ, BEAN, PICCININI, LOPEZ-MAYA AND OTHER DOES WAS THE FACT THAT INMATE DOMINGUEZ WAS ACTIVELY SOLICITING AND ATTEMPTING TO ORCHESTRATE THE UNPROVOKED ASSAULT ON MR. WHITE.

72.    A COMMUNICATION PENNED BY INMATE DOMINGUEZ DIRECTED TO INMATES RUBEN LOPEZ AND DOUGLAS GOMEZ WHICH WAS INTERCEPTED AND BROUGHT TO THE ATTENTION OF THE FEDERAL COURT, NEVADA ATTORNEY GENERAL AND DEFENDANTS BARRETT, ONTIVEROS, ASHCRAFT, JOHNSON, BEAN, PICCININI, LOPEZ-MAYA AND OTHERS ALLUDED TO WEAPON POSSESSIONS BY THESE INMATES AND OFFERED FELONY CONTRABAND AS A BOUNTY FOR MR. WHITE'S ATTACK. AWARE OF DOMINGUEZ'S INCITATION AND EFFORTS IN FERMENTING UNREST AGAINST MR. WHITE DEFENDANTS TURNED A BLIND EYE TO THE OBVIOUS THREAT TO INSULATE THEIR RAT DESPITE THE EGREGIOUSNESS OF HIS MAJOR RULE CLASS B VIOLATION UNDER AR 707 AND NEVER INVESTIGATED OR ACTED ON THE PENNED COMMUNICATION TO LOCATE WEAPONS. DESPITE THIS KNOWLEDGE DEFENDANTS TORRES, ASHCRAFT AND LOPEZ-MAYA STILL PERMITTED DOMINGUEZ TO ENTER MR. WHITE'S UNIT AND IN THEIR PRESENCE CONTINUE TO INCITE UNREST AND DIRECTLY THREATEN MR. WHITE SERIOUS BODILY INJURY.

73.    INMATE DOMINGUEZ SUCCESSFULLY PURSUED HIS CAMPAIGN OF SOLICITING MR. WHITE'S ATTACK IN OCTOBER/NOVEMBER 2021 WHEN ONE OF HIS ASSOCIATES ENTERED MR. WHITE'S ASSIGNED CELL ATTACKING AND STABBING HIM WITH A INMATE MANUFACTURED WEAPON. DEFENDANTS TORRES, WILLIAMS AND LOPEZ-MAYA OBSERVING AND ALERTED TO THE ATTACK, FAILED TO INVESTIGATE OR TAKE ANY ACTION AND RATHER COVERED IT UP. FOLLOWING THE FIRST ASSAULT AGAINST MR. WHITE THREATS OF ASSAULT STILL CIRCULATED AGAINST HIM THAT CONTINUED TO BE THE PRODUCT OF INMATE DOMINGUEZ'S INCITEMENTS AND OBVIOUSLY ORDAINED BY DEFENDANTS.

74.   OVER A MONTH AFTER MR. WHITE'S ATTACK AND STABBING, MS. DIXON ARRIVED TO UNIT 11 F-POD. AGAINST HER BACKGROUND OF BEING SEXUALLY ASSAULTED BY A CORRECTIONS OFFICER AT NNCC AND LEARNING OF THE PREDATORY NATURE OF VARIOUS F-POD INMATES FROM MR. WHITE FOR WHOM SHE KNEW FOR OVER A DECADE, SHE REMAINED HYPER-VIGILENT, OBSERVANT AND LARGELY ISOLATED HERSELF REMAINING HOSTILY UNAPPROACHABLE BY ANY EXCEPT THOSE SHE EMBRACED IN HER CLOSE INNER CIRCLE INCLUDING MR. WHITE AND CHRISTIAN JARO. INMATES BANTERED ON HER RUMORED EXTENSIVE VIOLENT HIS- TORY WHICH INCLUDED MULTIPLE INSTITUTION MURDERS, ATTEMPTS AND STABBINGS ACROSS STATE LINES, STAFF ASSAULTS, BATTERIES AND RIOTING. CIRCULATING THIS KNOWLEDGE CAUSED VARIOUS INMATES TO FEAR HER AND AVOID DIRECT CONFRONTATION INCLUDING DEFENDANTS JARRETT, BARRETT, WILLIAMS, AND LOPEZ-MAYA AMONGST OTHERS.

75.   INTIMIDATED BY HER PRESENCE AND LACK OF PATIENCE OR TOLERANCE FOR THE SHINANIGANS, OTHER INMATES FREQUENTLY IMPLICATED HER AS BEING INVOLVED IN SITUATIONS TO MANIPU- LATE DEFENDANTS SANCHEZ, JARRETT, ONTIVEROS, BARRETT AND ASHCRAFT TO REHOUSE HER AWAY FROM THEM ALTHOUGH SHE HAD NO PERSONAL INVOLVEMENT IN ANYTHING. IN EFFORTS TO APPEAR SENSITIVE TO HER HOUSING CONCERNS AND APPEASE HER AGAINST A BLANKET POLICY OF NOT MAKING ACCOMMODA- TION CONVENIENCE MOVES, DEFENDANT BARRETT MOVED TRANS- EGENDER PRISONER TARA RHONE INTO MS. DIXON'S QUARTERS. LEARNING OF MS. RHONE'S UNIT HISTORY WITH INMATE JAMES FROM MR. WHITE AND OTHERS, MS. DIXON STERNLY ADMONISHED MS. RHONE AGAINST ALLOWING ANY INMATE ENTRANCE INTO THE CELL FOR ANY REASON ESPECIALLY SEX ESCAPADES AND ENCOUNTERS. SHE FURTHER CAUTIONED MR. JAMES AGAINST DISRESPECTING HER CELL AND NOT ENTER HER CELL UNDER ANY CIRCUMSTANCES.

76.   AGAINST MR. DIXON'S EXPRESSED WISHES AND WITH APPROVAL OF DEFENDANT TORRESS ON AND ABOUT NOVEM- BER 25, 2021 MR. JAMES AND MS. RHONE DID SO ANYWAY. FURIOUS MS. DIXON IMMEDIATELY ALERTED DEFENDANTS BARRETT AND JARRETT OF THE PREA INSTANCE INVOLVING THEIR WORKER AND DEMANDED MS. RHONE'S REMOVAL FROM HER CELL. AS A ALTERNATIVE GIVEN HER AND MR. WHITE'S CALIFORNIA HISTORY, THEIR MEDICAL AILMENTS, ABILITY TO MONITOR EACH OTHER AND GIVEN HIS LEGAL EDUCATION, MS. DIXON SOUGHT HIM AS A CELL MATE. SHE WAS REBUFFED UNTIL IN-CELL TENSIONS ESCALATED TO THE THRESHOLD OF THREATS AND ONLY THEN DID DEFENDANTS BARRETT AND JARRETT REMOVE MS. RHONE-REPLACING HER WITH MR. WHITE.

24

77.    MEANWHILE, DEFENDANTS JARRETT, BARRETT AND ONTIVEROS EMPLOYED KERRY "SHUG" JOHNSON (A REPUTED SEX PREDATOR AND CLANDESTINE RAT) AS A WORKER IN F-POD WHO, PRIOR TO MR. WHITES MOVE WITH MS DIXON, IMMEDIATELY BEGAN PREYING ON AND LURING IN MR. WHITE'S CELLY CHRISTIAN JARO A 135 POUND, WHITE 19 YEAR OLD FIRST TERMER, GULLIBLE, SCARED, NAIVE AND WEAK APPEARING KID WHO PRESENTED AS EASY PREY FOR MR. JOHNSON A HOSTILE 5'11 - 6 FOOT 210+ POUND BLACK INTIMIDATING MALE TO MR. JARO. FEARFUL AND ON PROMISES OF PROTECTION, GIFTS, COMMISSARY ITEMS AND PACKAGES, MR. JARO ENABLED THE SEXUAL EXPLOITATION AND ABUSES UNBEKNOWN TO MR. WHITE. AWARE OF THE ONGOING SEXUAL EXPLOITATION AND ABUSE OF THIS KID BY THEIR WORKER MR. JOHNSON, DEFENDANTS BARRETT, JARRETT, ONTIVEROS, SANCHEZ AND ASHCRAFT CONDONED IT FAILING TO COME TO MR. JAROS AID DESPITE REPORTS BY VARIOUS INMATES OF THE SEXUAL ABUSES. WHEN MR. WHITE DISCOVERED THE SITUATION HE ENCOURAGED MR. JARO TO TERMINATE ANY FURTHER DEALINGS WITH MR. JOHNSON AND PLEDGE HIS AND MS. DIXONS SUPPORT AND PROTECTION FROM FURTHER ABUSE.

78.    RESENTING MR. JARO'S RETRACTION, SOMETIME IN DECEMBER 2021 DURING THEIR ACTIVITIES WHILE MR. JARO SLEPT USING WORKER MOBILITY AND PRIVILEGE MR. JOHNSON ENTERED MR. JARO'S CELL SECURING HIMSELF IN WHILE THE INNOCENT KID SLEPT BEFORE STRANGLING, CHOKING BITING, DIGITALLY PENETRATING AND MASTERBATING ON MR. JARO WHILE PULLING HIS HAIR. TRAUMATIZED FROM THESE EVENTS, MR. JARO FEARFUL OF RETALIATION FROM DEFENDANTS BARRETT, JARRETT, ONTIVEROS, SANCHEZ, ASHCRAFT AND MR. JOHNSON, REFUSED TO REPORT THE EVENT REMAINING SILENT AND LIVING IN TERROR. OPENLY BOASTING TO HIS ASSIGNED CELLY OF THE RAPE EVENT TO "TEACH HIM (JARO) A LESSON, MR. JOHNSONS CELLY ALSO A WORKER REPORTED THE EVENTS TO DEFENDANTS JARRETT AND BARRETT WHO TURNED A BLIND EYE FAILING TO ACT. RATHER, THEY SIMPLY REHOUSED MR. JOHNSON IN 11 C 14 AS A WORKER COVERING UP THE SEXUAL ASSAULT REFUSING TO ACT SO AS NOT TO LOSE A VALUABLE SOURCE OF THEIR RAT INFORMATION.

79.    EVENTUALLY MR. WHITE DISCOVERED THE EVENT AND BECAME INFURIATED SHARING THE EVENT WITH MS. DIXON WHO AS A SEXUAL ASSAULT VICTIM HERSELF RELATED AND WAS BOTH ANGERED AND DISGUSTED AT THE REVELATIONS. BOTH PLAINTIFF'S ENCOURAGED THE KID TO REPORT THE INCIDENT TO DEFENDANT JARRETT AND ACCOMPANIED HIM TO OBSERVE JARRETT AGAIN ATTEMPT TO COVER IT UP AND PROTECT HIS PRIZED RAT MR. JOHNSON.                                                    25

80.    OBSERVING THE PROFOUND DISGUST AND ANGER OF PLAINTIFF'S WHO BOTH ACCOMPANIED MR. JARO FOR THE REPORT, DEFENDANT JARRETT CONTACTED DEFENDANTS ONTI-VEROS AND BARRETT WHO INITIATED PREA PROTOCOL AND MOVED MR. JOHNSON NOT BECAUSE OF THE EGREGIOUSNESS OF THE PREDATORY SENSELESS VICTIMIZATION CAUSED TO MR. JARO BUT BECAUSE THESE DEFENDANTS FEARED PLAIN-TIFFS WOULD RETALIATE AGAINST THEIR PRIZED RAT. FOLLOWING THE KIDS TRAUMATIC EVENT PLAINTIFFS EMBRACED THE KID AS THEIR OWN PROVIDING HIM PROTECTION GIVEN DEFENDANTS UNWILLINGNESS TO DO SO AND ALERTING OTHERS TO STEER CLEAR. PLAINTIFFS EXPOSURE OF DEFENDANTS ONTIVEROS, JARRETT AND BARRETT'S COVER UP ATTEMPTS AND INSISTANCE THAT THEY PROPERLY ACT ON THIS PREA INSTANCE SET THE STAGE AND CREATED ANOTHER IMPETUS OF DEFENDANTS TO RETALIATE.

81.    BASED ON CONCOCTED AND PURELY EXAGGERATED REPORTS OF A NEW EMERGING RAT-CHRIS BECK, PLAINTIFFS CELL WAS SHREDDED BY DEFENDANTS SALKOFF, WILLIAM, SANCHEZ AMONG OTHERS AT THE BEQUEST OF DEFENDANT ONTIVEROS IN SEARCH OF WEAPONS PURPORTEDLY, DURING THIS SEARCH SHE POSSESSED MEDICAL CRUTCHES RECEIVED BY HER FROM MEDICAL WHICH REMAINED FULLY IN TACT BUT UNDOCUMENTED. MR. BECK, WHO PREVIOUSLY THE NEXT DOOR NEIGHBOR OF PLAINTIFFS IN 11F3 WAS HOMO-PHOBIC, RACIST DESPISED BLACKS AND WAS INTIMIDATED BY BOTH HIS RATHER LARGE CELLMATE INMATE DAMIEN SMITH AND BOTH PLAINTIFFS. DISCOVERING THE SNITCH ROUTE TO ASCEND TO POWER AS A UNIT WORKER AND BENEFIT FROM A BETTER HOUSING SITUATION, OUT OF DESPERATION, HE PROVIDED DEFENDANTS FALSE INFORMATION THAT PLAINTIFFS WERE CUTTING THEIR CELL DESK CONSTRUCTING A WEAPON WHILE SIMULTANEOUSLY AD-VISING DEFENDANTS ONTIVEROS, BARRETT, JARRETT, SANCHEZ AND OTHERS OF HIS ULTERIOR MOTIVE TO BE LYING INDICATING IN-CELL ANIMOUSITY BETWEEN HIM AND MR. SMITH AND THE FACT THAT HE HAD BAD BLOOD WITH PLAINTIFFS DUE TO LOUD PLAYING OF MUSIC.

82.    AT HDSP, A MEDIUM-MAXIMUM FACILITY, IT IS NOT UNCOM-MON FOR CELLS TO BE MISSING STRIPS OF DESK STEEL CUT BY PREVIOUS OCCUPANTS OF A CELL USED TO MAKE WEAPONS. IN FACT, EACH CELL ASSIGN-ED BOTH PLAINTIFFS HAD EVIDENCE OF SOME HISTORY OF DESK CUTTING (EG., 11-E-9; 11-F.27; 11-F-8; 11-F-4; 4-C-12; 6-B-40, ETC.). MORE-OVER, MR. WHITES CURRENT CELL AT THE TIME OF DRAFTING THIS COM-PLAINT HAS SEVERAL MISSING DESK STRIPS FROM PREVIOUS OCCUPANTS MAKING WEAPONS.

22-0099

83.     DEFENDANTS HAVE IMPLEMENTED NO METHOD OF
IDENTIFYING AND TRACKING THESE INSTANCES FOR THE SAKE
OF PROTECTING FUTURE INNOCENT OCCUPANTS AND BY IN WHICH
TO ASCERTAIN WHETHER THE CUTTING WAS BY CURRENT OR PREVIOUS
OCCUPANTS. THE FALSE INFORMATION PROVIDED BY MR. BECK
PROVED FALSE WHEN DEFENDANTS SALKOFF, SANCHEZ AND WILLIAMS
AMONGST OTHERS DISCOVERED THE IDENTIFIED DESK LOCATION
TO BE SUBSTANTIALLY RUSTED LACKING ANY EVIDENCE OF FRESH
CUTTING. HOWEVER MR. BECK WAS NEVER PENALIZED FOR HIS
FALSE REPORTS NOR DID THIS DISCOVERY STOP INHERENTLY
OFFENSIVE HOMO PHOBIC COMMENTS BEING MADE AGAINST
PLAINTIFFS BY DEFENDANTS WILLIAMS, SALKOFF AND SANCHEZ
DUE TO THEIR OBSERVATION OF MAKE UP, PANTIES AND BRAS
IN THE CELL DURING THE COURSE OF THEIR SEARCH.

84.     DEFENDANTS WILLINGNESS AND DESPERATION TO ACT
ON ANY INFORMATION INVOLVING PLAINTIFFS AS PRETEXTS TO EMPLOY
PUNITIVE SEARCHES AND CALCULATED HARASSMENT ON THIS OCCASION
CREATED YET ANOTHER DILEMMA AGAIN EXPOSED BY PLAINTIFFS TO
DEFENDANTS EMBARASSMENT AND WHICH DIRECTLY IMPACTED
THE SAFETY OF PLAINTIFFS, STAFF AND OTHERS AND CONSTITUTED
A EGGREGIOUS BREACH TO SECURITY IN WHICH DEFENDANTS, NOT
SURPRISINGLY, ATTEMPTED TO MINIMIZE, COVER UP AND CONCEAL.

85.     DOORS IN HDSP UNIT 11 ARE OPERATED FROM A ELECTRONIC
CONTROL PANEL IN THE UNIT TOWER. THE MAGNET ALLIGNMENT OR
LACK THEREOF SENDS A SIGNAL TO THE TOWER CAUSING A GREEN
OR RED LED INDICATOR AS TO WHETHER A DOOR IS SECURE OR
OPEN. IN THE EVENT OF A SYSTEM FAILURE OF THE TOWER COM-
PUTER OR EMERGENCY, THE OPTION OF MANUALLY KEYING THE
DOOR OPEN CAN BE EMPLOYED BY A OFFICER WHICH BYPASSES
THE UNIT TOWER CONTROL. A MANUALLY UNLOCKED DOOR MUST BE
MANUALLY RELOCKED BY KEY IN ORDER TO RENDER THE TOWER
LED INDICATORS RELIABLE. A MANUALLY UNLOCKED DOOR CAN
STILL BE CONTROLLED BY THE TOWER BUT ALTHOUGH SHOWING
LOCKED ON THE PANEL DUE TO THE ALLIGNMENT OF THE MAGNETS,
IN ACTUALITY AND FACT WITHOUT KEY MANUALLY RE-LOCKING
THE DOOR IT IS NOT LOCKED AND CAN SIMPLY BE PULLED  OPEN
WITH LITTLE EFFORT.

86.     IN ENTERING PLAINTIFFS CELL DEFENDANTS SALKOFF, WILLIAMS,
SANCHEZ AND OTHERS MANUALLY KEYED THE DOOR OPEN PURPOSEFULLY FOR-
GETTING TO RE-KEY IT LOCKED UPON DEPARTING. GIVEN THAT THE DOOR
MAGNETS ALLIGNED, THE TOWER REMAINED UNDER FALSE IMPRESSION
THAT SAID DOOR WAS SECURED FOLLOWING THE EVENING SEARCH AND
FOR 17 HOURS. THE FOLLOWING MORNING AT 11:00 A.M., REALIZING HER
DOOR WAS UNSECURED THROUGHOUT THE NIGHT AND EARLY MORNING HOURS,
SHE CONFRONTED THE UNIT TOWER OFFICER MOKA SEEKING THAT HE
DOCUMENT THE EVENT FOR FUTURE REFERENCE.

27

22-0099

87.     THE FLAGRANT LAPSE IN SECURITY WHICH WAS DELIBER-
ATE COULD HAVE PROVOKED VARIOUS SCENARIOS AS IT INVOLVED
2 LGBTQ MAX CUSTODY PRISONERS WITH VIOLENT HISTORIES, SEN-
TENCED TO LIFE SENTENCES AT NITE IN A UNSECURED CELL ALONE
WITH AN UNWARY LONE NITEMAN. ANY SCENARIO FROM A KID-
NAP/HOSTAGE SITUATION, ATTEMPTED ESCAPE TO WORSE ASSAULT
OR MURDER COULD HAVE ARISEN. MOREOVER, FOR PLAINTIFF'S
AND ESPECIALLY MS. DIXON WITH A HISTORY OF SEXUAL ASSAULT
VICTIMIZATION, THE SCENARIO COULD HAVE RESULTED IN
THEIR BRUTAL ASSAULTS WHILE THEY SLEPT BY OTHER INMATES
OR WORSE A RAPE GIVEN THE PREDATORY ATMOSPHERE FOSTERED
AND CREATED BY DEFENDANTS. EVEN MORE, IT POSED A DIRECT
THREAT AGAINST OTHER UNIT INMATES WHO COULD HAVE EASILY
BEEN ABDUCTED INTO THE CELL AND ASSAULTED OR MURDERED.

88.     GIVEN THE SEVERITY OF THE BREACH BOTH PLAINTIFFS
GRIEVED TO AND SIMULTANEOUSLY CAUSED FILINGS OF EMAILS
REGARDING THE ISSUE TO DEFENDANTS FINLEY, JOHNSON, CINIVEROS
AND BARRETT AND IT WAS COVERED UP. THE EMAILS PARTICULARLY
EXPRESSED CONCERN FOR RETALIATION AND WAS FILED WITH THE
NEVADA ATTORNEY GENERALS OFFICE AS WELL. DEFENDANT FINLEY
COMPLICIT IN DEFENDANTS COVER UP DISMISSED THE CONCERN AS
A "MAINTENANCE ISSUE."

89.     OBSERVING THE LEVEL OF INDIFFERENCES, INCOMPETENCE,
DISREGARD, INEPTNESS AND RECKLESSNESS AGAINST THE BACKDROP
AND NOTORIOUS HISTORY OF RAPES AND ASSAULTS IN THE POD
COUPLED WITH THE REPLETE INSTANCES OF STAFF COVER UPS AND
DEFENDANTS INCITEMENT AND INSTIGATION OF INCIDENTS, BOTH
PLAINTIFFS BEING PREVIOUSLY STABBED, SEXUALLY AND PHYSICALLY
ASSAULTED AND ABUSED, ITS NO WONDER WHY INMATES WOULD
FEEL THE URGE AND NEED TO SELF-ARM TO PROVIDE SELF-PROTEC-
TION WHERE DEFENDANTS HAVE RESULTANTLY DEMONSTRATED THE
INABILITY TO KEEP INTERNAL ORDER AND PROVIDE THEIR
PROTECTION LESS ALONE THE PROTECTION OF ONE OF THEIR OWN
AN UNARMED INNOCENT UNWARY LONE NITEMAN - OFFICER
K. THOMAS. EVEN MORE SO AFTER THEIR WITNESSING OF YET
ANOTHER CELL RAPE ORCHASTRATED BY DEFENDANTS OCCURRING
JUST 2 CELLS AWAY IN 11-F-6 JUST DAYS FOLLOWING THE
UNKEYED DOOR INCIDENT. UNBEKNOWN TO PLAINTIFF'S AT
THE TIME, SAID PERCEPTION, ANALYSIS AND PRISON TEACH-
INGS WOULD PROVE INVALUABLE IN THE NEAR FUTURE TO
BEFALL PLAINTIFFS AS WOULD BE ORCHASTRATED AND
INSTIGATED BY DEFENDANTS THEMSELVES AS RETALIATION.

90.     In late February / early March 2022 inmate Joshua Johnson NDOC no. 1251684 moved into unit 11 cell F-24 from unit 10 which housed inmate Dominguez and a documented enemy of Ms. Dixon "Frank". Unbeknown to plaintiffs, Joshua Johnson was paid a bounty to facilitate or initiate a stabbing assault on plaintiffs. This was confirmed subsequently Tuesday March 22, 2022 when Mr. White encountered both Dominguez and his celly inmate Freeman when they berated him in passing assuring him "the due is paid St. Louis has something for you and Seanah's ass."

91.     Upon returning to his cell Mr. White made Ms. Dixon abreast of the imminent credible threat instructing her to remain vigilant to ensure each others safety. In the afternoon hours March 30, 2022 a inmate Mays arrived as the assigned cellmate of Joshua Johnson after a broadcasted channel 6 I-team investigation aired a special segment on the predatory history of Mr. Mays. With absolutely no involvement of plaintiffs, almost instantly other F-pod residents began influencing Joshua Johnson to eject Mr. Mays out of the unit pod and his cell. At P.M. tier activities Johnson approached plaintiffs door at which time they advised him respectfully to stay away from their door advising that so long as he lived with Mr. Mays he was not welcome at their door.

92.     Instigating a scenario Johnson falsely conveyed to Mr. Mays that plaintiffs were the source attempting to have him ejected out of the pod causing Mays to directly approach plaintiffs cell for confrontation and advising plaintiffs that Johnson informed him that it was plaintiffs. Plaintiffs assured Mr. Mays that this was not the cell to be picking fights with. "I promise you." After Mr. Mays abandoned plaintiffs door and talked to Johnson, inmate Johnson returned to plaintiffs door overly animated threatening plaintiffs confirming his bounty pay to assault plaintiffs and vowing to "blast" their "asses" and "smash" them out, plaintiffs simply responded "say less."

93.     With tensions rising the following morning desperate to relocate Mr. Mays brutally smashed a unsuspecting inmates face with a large rock in a cloth bag. Confined in their cell at the time of the incident plaintiffs had absolutely nothing to do with it but with good reason suspected Mr. Johnson had a weapon and would attack them first opportunity.

29

94.    DESPITE BEING CONFINED WHEN THE INCIDENT OCCURRED AND BEING ON THE COMPLETE OPPOSITE TIER GROUP, AS USUAL SNITCHES FALSELY IMPLICATED PLAINTIFFS AS BEING INVOLVED WITH THE INCIDENT. BY DEFENDANTS ASHCRAFT AND SALKOFF'S ACCOUNTS MAYS AND JOHNSON IMPLICATED PLAINTIFFS. PRIOR TO 11:30 A.M. ON MARCH 31, 2022, DEFEN-JARRETT CONTACTED PLAINTIFFS AT THEIR CELL ADVISING MS. DIXON TO "ROLL UP" SHE'S MOVING DESPITE KNOWING HER HOUSING SENSITIVITY ISSUES AND HIGH PROPENSITY FOR VIOLENCE IF HOUSED WITH THE WRONG CELLMATE. DEFENT JARRETT INFORMED PLAINTIFFS "BARRETTS TIRED OF YOUR NAMES COMING UP IN SHIT SHE'S PISSED RIGHT NOW." MS. DIXON PACKED AND REMAINED PACKED UNTIL SHORTLY AFTER 5:30 p.m.

95.    SHORTLY AFTER 5:30 p.m. A COTERIE OF OFFICERS ENTERED UNIT 11 F POD INCLUDING DEFENDANTS ASHCRAFT, SALKOFF, JACKSON, LOPEZ-MAYA, OBLAK, MARTINEZ AMONG OTHERS, MARCHING STRAIGHT TO PLAINTIFFS CELL THEY DEMAND-ED THAT PLAINTIFFS EXIT TO THE SHOWERS AND UNCLOTH FOR A CAVITY SEARCH TO WHICH PLAINTIFFS COMPLIED. DEFENDANT ASHCRAFT ADVISED PLAINTIFFS THAT EACH TIME HE COMES TO UNIT 11 ITS INVOLVES PLAINTIFFS AND THAT HE SHOULD JUST LET OUT THE SAME PERSON THAT SNITCHED ON PLAINTIFFS IN F24 OUT TO "FUCK YOU UP AND BE THROUGH WITH IT WITH DEFENDANT LOUVERTURE CHIMING IN THAT HES ITCHING TO SHOOT SOME-BODY. ASHCRAFT INSTRUCTED DEFENDANT LOUVERTURE TO RELEASE INMATE JOHNSON FROM HIS CELL ONCE THEY LEAVE SO "THEY CAN TALK" ABOUT WHAT ASHCRAFT AND LOUVERTURE AND STAFF TALKED ABOUT IN THE HALLWAY CONCLUDING "YOU NEVER KNOW YOU MAY GET A SHOT!" ASHCRAFT CONTINUED TALKING WITHIN EARSHOT OF PLAINTIFFS TO LOUVERTURE IMPLICATING THE INMATES WHO ARE SNITCHING MAKING DEFENDANTS "JOBS HARDER" AND ADVISING THAT AS LONG AS ITS NOT HIS STAFF OR INMATE WORKERS HE DIDN'T GIVE A SHIT WHAT YOU DO!"

96.    FAILING TO DETECT THAT PLAINTIFFS HAD ONE OR MORE KNIVES ON THEM THEY WERE CUFFED AFTER PURPORTED "SEARCH" AND PLACED IN UNIT A/B POD CLASSROOM WHILE THEIR CELL AND PROPERTY WAS DESECRATED. ESCORTING MS. DIXON AND IN MR. WHITES PRESENCE DEFENDANT SALKOFF BOASTED THAT HES ABOUT TO "FUCK YOUR CELL UP SINCE YOU GUYS WANNA COMPLAIN AND FLY EMAILS ABOUT ME, MY SERGEANT AND CO-WORKERS." SALKOFF FURTHER CHALLENGED PLAINTIFFS TO "BLANK WRONG" TO JUSTIFY HIS USE OF FORCE TO NO AVAIL AS PLAINTIFFS JUST LAUGHED.

97.     AT THE BEQUEST OF DEFENDANT ONTIVEROS PLAINTIFFS CELL AND PROPERTIES WERE DESECRATED FOR SOME 1 HOUR BY MULTIPLE OFFICERS INCLUDING DEFENDANTS SALKOFF, JACKSON, ASHCRAFT, LOPEZ-MAYA, MARTINEZ AND OBIAK AMONGST OTHERS IN A CALCULATED EFFORT TO INFLAME, INCITE, ANGER AND GET A VIOLENT RESPONSE FROM PLAINTIFFS. THE MALICIOUS, PUNI-TIVE, INHERENTLY DISASTEROUS SEARCH LEFT SOME 7500-10,000 PAGES OF LEGAL DOCUMENTS COMPLETELY SHUFFLED IN SHAMBLES AND IN DISARRAY WITH ALL OF PLAINTIFFS PROPERTIES STREWN THROUGHOUT THE CELL MIXED TOGETHER. VARIOUS ITEMS WERE TAKEN OF PERSONAL PROPERTY, EVIDENCE WAS PLANTED AND DESTROYED AND PROPERTY DESTRUCTED. ONE WEAPON WAS RECOVERED FROM THE CELL. VIEWING GAY PUBLICATION "BLACK AND PINK" MAGAZINES, NUDE MALE PHOTOS, MAKE UP BRAS AND PANTIES OUT OF SPITE AND ANTI-GAY RESENTMENT ONE OR MORE DEFENDANTS ETCHED "FAGS" "HOMOS" "FLM" AND OTHER HOMOPHOBIC EPITHETS OR ACRONYMS. FOLLOWING THE CELL SEARCH PLAINTIFFS WERE RELEASED BACK TO THEIR CELL SHORTLY PRIOR TO 6:30 P.M. ACTIVITY RELEASE FOR LOWER TIER.

98.     ANGERED AT THE CATASTROPHIC AND DISRESPECTFUL RESULTS OF THE PUNITIVE SEARCH MS. DIXON CONFRONTED DE-FENDANT LOUVERTURE ABOUT THE "SHIT TALKING" BETWEEN HIM AND DEFENDANT ASHCRAFT. DEFENDANT LOUVERTURE CONVEYED "TAKE CARE OF YOUR BUSINESS IN LETTING HIM (INMATE JOHNSON) OUT. MS. DIXON ADVANCED UPSTAIRS AND MR. WHITE ADVANCED NEAR THE STAIRS PREPARING TO ASSIST MS. DIXON WITH THE CONFRONTATION IN THE EVENT DEFENDANT LOUVERTURE CREATED A THREAT BY PURPOSEFULLY RELEASING INMATE JOHNSON WHICH INDEED HE DID. HEAR-ING MR. JOHNSONS DOOR RELEASE MR. WHITE AND MS. DIXON RESPONDED ASSUMING JOHNSON, LIKE MAYS, AS THREATENED THE PREVIOUS DAY, HAD A WEAPON.

99.     THE DELIBERATE EXPOSURE OF PLAINTIFFS TO THIS CLEARLY PERCEIVED AND FORESEEABLE THREAT WAS INTENTIONAL, INCITED AND INSTIGATED BY THESE ROGUE DEFENDANTS IN EFFORTS TO CREATE JUSTIFIABLE PRETEXTS TO LETHALLY SHOOT PLAINTIFFS. DEFENDANTS PURPOSEFULLY AND FRAUDULENTLY TAMPERED WITH THE CRIME SCENE TO CONCEAL AND COVER UP THEIR CULPABILITY AND INVOLVEMENTS AFTER THE FACT PURPOSEFULLY CONTAMINATING AND PLANTING EVIDENCE TO SUPPORT THEIR NARRATIVE OF PRECIPITATING EVENTS. RESULTING REPORTS INVOLVING THE CELL SEARCH AND INSTIGA-TED INSTANCE OF VIOLENCE AUTHORED BY DEFENDANTS SALKOFF AND LOPEZ-MAYA WERE BOTH MALICIOUSLY, PURPOSEFULLY FALSIFIED, SANITIZED MISREPRESENTING, DISTORTING AND OMITTING RELEVANT FACTS AND IDENTITIES OF ALL STAFF PARTICIPANTS.

31

106. DEFENDANTS ONTIVEROS, SANCHEZ, ASHCRAFT, OBLAK, STEWART, MARTINEZ AND SYDIENGO AMONGST OTHERS WERE COMPLICIT IN THE FAILURE TO PROTECT AND ATTEMPTED TO COVER UP THE SEVERITY OF THE INCIDENT AS AFTER VIEWING THE RESULTING REPORTS OF DEFENDANTS LOPEZ-MAYA AND SALKOFF, RATHER THAN CAUSING THE INSERTION OF CORRECT AND TRUE FACTS, THESE DEFENDANTS ENDORSED AND APPROVED THE FALSE NARRATIVES REPORTED BY SALKOFF AND LOPEZ-MAYA APPROVING THEIR FILINGS AND ACTING COMPLICIT IN THE COVER UPS.

107. ALL OF PLAINTIFFS PROPERTIES WERE THROWN ONTO A LARGE CART MIXED, CERTAIN PROPERTIES WERE TAKEN ARBITRARILY INCLUDING, BUT NOT LIMITED TO MR. WHITE'S PERSONAL WATCH, A GOLD RING, MS. DIXON'S LARGE CLEAR BOOM BOX RADIO, MAKE UP, PERSONAL LEGAL BOOKS AND MAGAZINES, MEDICAL AND LEGAL RECORDS, AND BOTH COMMISSARY AND PACKAGE ITEMS ALL LEGITIMATELY PURCHASED AND POSSESSED BY PLAINTIFFS. TO BE MALICIOUS AND VINDICTIVE AND AS VOWED DEFENDANTS LOPEZ-MAYA, ASHCRAFT, SALKOFF AND JACKSON PURPOSEFULLY STACKED 3 FULL BOXES OF LEGAL DOCUMENTS ON TOP OF MR. WHITE'S PERSONAL '13 FLAT SCREEN TELEVISION PURPOSEFULLY BUSTING ITS SCREEN. SOME OF PLAINTIFFS PERSONAL CLOTHINGS AND PHOTOGRAPHS WERE ALSO DAMAGED WITH DEFENDANTS INTENTIONAL SPILLAGE OF HYGIENIC ITEMS SUCH AS BABY OIL, VASALINE, SHAMPOO, CONDITIONER, BODY WASH, MOUTH WASH AND LOTION ONTO THEM. CONTAINED IN THEIR PROPERTIES IN ADDITION TO PERSONAL ITEMS THEY WERE DENIED WERE ALSO ESSENTIAL MEDICATIONS AND APPARATUS'S AS WELL AS LEGAL MATERIALS.

108. FINALLY PLAINTIFFS WERE PLACED INTO SEGREGATION PENDING HEARINGS ON THE GROSSLY DISTORTED DISCIPLINARY REPORTS UNDER THE MOST OF INHUMANE AND UNCIVILIZED CONDITIONS THAT WOULD ONLY COMPOUND THEIR TERROR AND DEFENDANTS AND THEIR AGENTS TREACHERY AND INSENSITIVITY. AFTER PLACING EACH OF THEM INTO SEGREGATION WITH SIMPLY THE CLOTHES ON THEIR BACKS DEFENDANTS MALICIOUSLY AND TO BE SADISTIC PAUSED THEIR MOST BASIC HUMAN, CIVIL AND CONSTITUTIONAL RIGHTS SUBJECTING THEM TO THE MOST UNCONSCIONABLE, EGREGIOUS, DISPICABLE, DEPLORABLE, OFFENSIVE AND INHUMANE CONDITIONS PURPOSEFULLY DEPRIVING THEM OF THE MOST MINIMAL BASIC NECESSITIES OF LIFE.

**103.** IN SEGREGATION AND SINCE SAID PLACEMENT THRU THE FILE DATE OF THIS ACTION THEIR PROVISION OF ADEQUATE FOOD AND NUTRITION HAS BEEN SUBSTANTIALLY DIMINISHED THEIR LIFE-SUSTAINING MEDICAL CARE INTERFERED WITH AND FLAT OUT DENIED AND COMPLETE DISREGARD GIVEN TO THEIR RELIGIOUS AND COURT ACCESS RIGHTS. PLACED INTO SEGREGATION WITH JUST THE CLOTHES ON THEIR BACKS THEY HAVE BEEN RENDERED INCAPABLE NOW FOR 17 CONSECUTIVE DAYS TO PROPERLY BATH, GROOM AND HAVE REMAINED LANGUISHING IN THE SAME SOILED UNDER GARMENTS ABSENT ANY CHANGE OR ABILITY TO WASH THEM. NOR HAVE THEY BEEN PERMITTED TO ACCESS BASIC AND ROUTINELY USED HYGIENIC ITEMS SUCH AS SHAMPOO, BODY WASH, CONDITIONER, LOTION, DEORDERANT, ECT. BEING PROVIDED 1 SINGLE STATE WOOL BLANKET AND 2 SHEETS DESPITE POSSESSING THEIR OWN IN PROPERTY, THEY HAVE BEEN DENIED FRESH LINEN.

**104.** MR. WHITE'S ASTHMATIC CONDITION AND INABILITY TO UTILIZE WOOL PRODUCTS DUE TO HIS ASTHMA ONLY COMPOUNDS HIS SUFFERING GIVEN THE FRIGID TEMPERATURES AND INABILITY TO ACCESS HIS PERSONAL NON-WOOL BEDDINGS. GIVEN PLAINTIFFS ALREADY DIMISHED NUTRIENTS THEIR COMPROMISE TO HAVE TO NEGOTIATE THEIR DAILY NUTRIENTS FOR THE SIMPLEST OF BASIC ITEMS LIKE PEN AND PAPER FURTHER AGGRAVATE THE DIRE SITUATION. THESE DEPLORABLY HARSH CONDITIONS AND DEFENDANTS COMPLETE DISREGARD TO PLAINTIFFS SUFFERINGS BEING PURPOSEFULLY INFLICTED ARE OUT OF SPITE AND RESENTMENT AND TO INTENTIONALLY PUNISH PLAINTIFFS HARSHEN THEIR LIVING CONDITIONS, DIMINISH AND CHIP AWAY AT THEIR CIVILITY, INTEGRITY, DIGNITY, SELF RESPECT, PSYCHOLOGICAL HEALTH AND SANITY, HUMANITY, SELF WORTH AND SENSE OF INDEPENDENCE. RENDERING THEM FULLY INCAPABLE OF EVEN SELF DEPENDANCE DEFENDANTS ARE PURPOSEFULLY DEHUMANIZING, BELITTLING AND EMBARASSING PLAINTIFFS WITH SHEER HUMILIATION.

**105.** ON APRIL 04, 2022 PLAINTIFFS WERE SUMMONED TO IDENTIFY AND SEPARATE THEIR PROPERTIES DISCOVERING NUMEROUS DAMAGED AND MISSING PROPERTIES. THEY EACH SOUGHT THEIR MEDICATIONS AND MEDICAL APPARATUS AND WERE DENIED UNTIL SUCH TIME AS DEFENDANT GARCIA ORDAINED THE RELEASE OF THEIR PROPERTIES. TO DATE MR. WHITE ON BOTH PLAINTIFFS BEHALF HAS APPEALED FOR THE RELEASE OF AT LEAST THEIR MEDICAL PROPERTIES TO DEFENDANTS LEONE, GARCIA, MOORE AND BARTH TO NO AVAIL AS COMPLICIT IN THE VIOLATIONS THEY EACH HAVE PURPOSEFULLY FAILED TO ACT TACITLY ORDAINING THE ABUSES.

106.   FROM A INMATES PREVENTABLE DEATH CAUSED IN 2020
BY DEFENDANT LEONG, HE AND MR. WHITE HAD A HOSTILE AND
ADVERSARIAL RELATIONSHIP. FOLLOWING MR. WHITE'S SEGREGA-
TION DEFENDANT LEONG AS THE UNIT SUPERVISOR WAS REPEATEDLY
MADE AWARE OF MR. WHITES NEED FOR HIS MEDICAL PROPERTY
AND REBUFFED IT OUT OF ANIMOSITY AND HOSTILITY AGAINST
MR. WHITE. INCITING  UNIT UNREST AGAINST MR. WHITE
DEFENDANT LEONG ADVISED ADJACENT GP INMATES OPENLY
THAT MR. WHITE WAS PROTECTIVE CUSTODY CAUSING DEATH
THREATS, RIDICULE, TAUNTING AND HARASSMENT. FOLLOWING
A UNIT FIRE-IN WHICH LEONG ATTEMPTED TO SUFFOCATE
A PRISONER IN MR. WHITES VIEW ON APRIL 11, 2022, A
ENORMOUS AMOUNT OF SMOKE AND RETARDANT DRIFTED TO
MR. WHITES CELL AREA RENDERING HIM INCAPABLE OF
BREATHING DUE TO HIS ASTHMA. HE SOUGHT FRESH AIR
AND THAT A INHALER BE OBTAINED FROM MEDICAL OR HIS
PROPERTY. LEONG ADVISED MR. WHITE "FUCK YOU ITS NOT
MY PROBLEM. SHUT THE FUCK UP ITS PRISON." WHEN MR. WHITE
VOWED TO GRIEVE LEONG HE ADVISED "YOU MAY NOT BE
ALIVE TO SEE YOUR PROPERTY PUNK!" MR. WHITE SUFFERED
TERRIFYING ASTHMA ATTACKS AND LABORED BREATHING EPISODES
AS A RESULT. FEARING FOR HIS IMMEDIATE SAFETY AND LIFE
MR. WHITE SOUGHT ASSISTANCE FROM DEFENDANTS MOORE,
YATES AND MCKEEHAM ALL WHO TO PLAINTIFF WHITES
DETRIMENT TURNED A BLIND EYE REFUSING TO ACT OR EVEN
MERELY INQUIRE INTO THE BASIS OF HIS CONCERNS.

107.   UNDER DEFENDANTS OPERATIONS PROCEDURES AND
ADMINISTRATIVE REGULATIONS 507 AND 711 INMATES PLACED
IN SEGREGATION TYPICALLY ARE ACCOMPANIED BY THEIR PROP-
ERTY OR AT THE VERY MINIMUM RECEIVE IT WITH AN INVEN-
TORY SLIP WITHIN 3 DAYS. DEFENDANTS WITHHOLDING OF
PLAINTIFFS PROPERTIES IS CAPRICIOUS, MALICIOUS AND IS
CALCULATED TO FRUSTRATE AND CIRCUMVENT LEGAL PROCESSES,
PERPETRATE FRAUDULENT THEFTS AND FOR THE VERY PURPOSE
OF CAUSING  PLAINTIFFS  SUFFERINGS.

108.   UNIT 11 CONTAINS SOME 73+ CAMERAS WHICH ARE
CONTAINED ALL OVER THE UNIT FOR MONITORING PURPOSES IN-
CLUDING IN THE COMMON AREAS ASSOCIATED WITH THE EVENTS
DESCRIBED AT PARAGRAPHS 32-34, 39-43, 46, 49, 51, 63, 70-
71, 73-81, 86, 89-99, 101-102 AND 106, SUPRA. BY AD-
MISSION OF DEFENDANT BARRETT SAID FOOTAGE IS RETRIEVA
BLE UP TO TWO YEARS PRIOR CONSIDERING THE TIME, DATE
AND LOCATION IS PROVIDED. IN WHICH TO PREVENT SPON-
TANEOUS OR COINCIDENTAL FRAUDULENT SPOLIATION OF THIS CRUCIAL
EVIDENCE PLAINTIFFS PRIOR TO SERVING THIS COMPLAINT
ANTICIPATE DIRECTING FORMAL REQUESTS FOR EVIDENCE PRE-
SERVATION RELEVANT TO THIS ACTION.

109.   ALL DEFENDANTS AS EMPLOYEES OF THE NDOC WERE ON NOTICE AND SERVED UPON EMPLOYMENT NDOC AR 339 (EMPLOYEE CODE OF ETHICS AND CONDUCTS, CORRECTIVE OR DISCIPLINARY ACTION, PROHIBITIONS AND PENALTIES) OF THE EXPECTATIONS EXPECTED OF THEM AS PROFESSIONALS CHARGED WITH THE CUSTODY OF PLAINTIFFS AND OTHER PRISONERS AND THEIR STERN ADHERENCE TO THE CODE OF ETHICS AND DESPITE SUCH RESENTFULLY DISREGARDED THESE LEGAL RESPONSIBILITIES AND DUTIES TO THE DETRIMENT OF PLAINTIFFS AND THEIR HUMAN, CIVIL AND CONSTITUTIONAL RIGHTS. RATHER THAN REPORTING, WITHOUT RESERVATION, THE CORRUPTION OF ROGUE EMPLOYEES, THEY EACH ACQUIESCED, TACITLY APPROVED AND ENTERED INTO AN ACTIVE CONSPIRACY TO PERPETUATE FRAUD AND A COVER UP IN ADMINISTRATIVE LEGAL PROCEEDINGS AND CIRCUMVENT AND OBSTRUCT THE DUE COURSE OF JUSTICE BEFORE THIS AND OTHER COURTS.

110.   DEFENDANTS ACTIONS, CONDUCTS, INDIVIDUALLY AND CONCERTEDLY WERE GRAVELY OFFENSIVE, CALCULATED, MALICIOUS, CAPRICIOUS, SADISTIC, CALLOUS, ABUSIVE, DISCRIMINATORY, HORRIFYING, PROVOCATIVE AND WITH DISREGARD AND COMPLETE INSENSITIVITY TO PLAINTIFFS HUMAN, CIVIL, CONSTITUTIONAL AND PROPERTY RIGHTS, STATE AND FEDERAL LAW, NDOC REGULATIONS AND THE RIGHTS AND ENTITLEMENTS OF ADVERSELY IMPACTED THIRD-PARTIES.

111.   AS A DIRECT PROXIMATE RESULT OF THE DEFENDANTS ACTIONS, INACTIONS, MISTREATMENTS, ABUSES, VIOLATIONS, OFFENSES, OMISSIONS, CONSPIRACIES AND COVER UPS, PLAINTIFFS WERE INJURED IN THEIR PERSONS, PSYCHES AND PROPERTIES AND SUFFERED ACTUAL INJURIES AND DAMAGES. DEFENDANTS EVIL AND FRAUDULENT DEEDS WERE THE PROXIMATE RESULT AND CAUSE OF THOSE INJURIES, DAMAGES AND HUMAN, CIVIL, PROPERTY AND CONSTITUTIONAL RIGHTS VIOLATIONS.

## VI.   LEGAL CLAIMS

112.   FOR PURPOSES OF ALL LEGAL CLAIMS, PLAINTIFFS REINCORPORATE BY REFERENCE PARAGRAPHS 1 THRU 111, INCLUSIVE, AS IF FULLY SET FORTH AT AND IN EACH RESPECTIVE FEDERAL AND STATE LEGAL CLAIM.

22-0099

A.          FEDERAL

CLAIM I (42 U.S.C. § 1983) BY BOTH PLAINTIFFS
AS AGAINST DEFENDANTS JOHNSON, RIVAS, JACKSON,
LOPEZ, STEWART, BARRETT OBLAK, ASHCRAFT, MARTINEZ,
GARCIA, BERNALES, VIZCARRA-RODRIGUEZ, ONTIVEROS,
JARRETT, SALKOFF, WILLIAMS, DON DOE, NURSE DOES
AND OTHER DOES

US CONSTITUTION, AMENDMENT I RETALIATION,
INTERFERENCE WITH COURT ACCESS AND RIGHT
TO PETITION GOVERNMENT FOR REDRESS OF
GRIEVANCE.

113.        AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT
THE DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED
PLAINTIFFS RIGHTS AS GUARANTEED UNDER THE FIRST
AMENDMENT TO THE U.S. CONSTITUTION AS THEY ACTIVELY
INTERFERRED WITH AND OBSTRUCTED PLAINTIFFS ABILITY
TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCE AND
MEANINGFULLY ACCESS COURTS WITHOUT RETALIATION OR
INTERFERENCE AND SAID ACTIONS FRUSTRATED PLAINTIFFS
EFFORTS CAUSING THEM HARM TO THEIR PERSONS, HEALTHS
AND FIRST AMENDMENT RIGHTS WERE EFFECTIVELY CHILLED.

CLAIM II (42 U.S.C. § 1983) BY MS. DIXON
AS AGAINST DEFENDANTS RIVAS, JARRETT, JACKSON,
LOPEZ-MAYA, STEWART, BARRETT, OBLAK, ASHCRAFT
MARTINEZ, GARCIA, LEONG, BARTH, MOORE, DON DOES,
NURSE DOES AND OTHER DOES.

U.S. CONSTITUTION, AMENDMENT 8 - DELIBERATE
INDIFFERENCE TO SERIOUS MEDICAL CONDITIONS,
INTERFERRING WITH PRESCRIBED CARE.

114.        AS ALLEGED ABOVE MS. DIXON SUBMITS THAT THE
DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED HER
RIGHTS AS GUARANTEED UNDER THE EIGHTH AMENDMENT
TO THE U.S. CONSTITUTION AS THEY CONSTITUTED DELIBER-
ATE INDIFFERENCE TO HER SERIOUS MEDICAL CONDITIONS
AND/OR ACTIVE INTERFERENCE WITH HER PRESCRIBED
CARE WHICH RESULTED AND CONTINUES TO RESULT IN HER
WANTON SUFFERING OF PAIN AND INJURY TO HER PERSON
AND HEALTH.

CLAIM III (42 U.S.C. § 1983) BY MR. WHITE AS AGAINST DEFENDANTS RIVAS, JARRETT, ONTIVEROS, WILLIAMS, LOPEZ-MAYA, BARRETT, ABEL, BERNALES, VIZCARRA-RODRIGUEZ, JACKSON, STEWART, OBLAK, MARTINEZ, LEONG, GARCIA, BARTH, MOORE, NURSE DOES, PHARMACY DOES, DON DOE AND OTHER DOES.

U.S. CONSTITUTION, AMENDMENT 8, DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL CONDITIONS, INTERFERRING WITH PRESCRIBED CARE.

115.    AS ALLEGED ABOVE MR. WHITE SUBMITS THAT THE DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED HIS RIGHTS AS GUARANTEED UNDER THE 8TH AMENDMENT TO THE U.S. CONSTITUTION AS THEY CONSTITUTED DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL CONDITIONS AND/OR ACTIVE INTERFERRENCE WITH HIS PRESCRIBED CARE WHICH RESULTED AND CONTINUES TO RESULT IN HIS WANTON SUFFERING OF PAIN AND INJURY TO HIS PERSON AND HEALTH.

CLAIM IV (42 U.S.C. § 1983) BY MR. WHITE AS AGAINST DEFENDANTS PHARMACY DOES, ABEL, O'CONNOR, DOE NURSES AND OTHER DOES.

U.S. CONSTITUTION AMENDMENT 8 DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL/PSYCHIATRIC CONDITIONS; INTERFERRING WITH PRESCRIBED CARE.

116.    AS ALLEGED ABOVE MR. WHITE SUBMITS THAT THE DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED HIS RIGHTS AS GUARANTEED UNDER THE 8TH AMENDMENT TO THE U.S. CONSTITUTION AS THEY CONSTITUTED DELIBERATE IN-DIFFERENCE TO HIS SERIOUS MENTAL HEALTH CONDITIONS AND/OR ACTIVE INTERFERRENCE WITH HIS PRESCRIBED CARE WHICH RESULTED IN HIS WANTON SUFFERING OF PAIN AND INJURY TO HIS PERSON, HEALTH AND MENTAL HEALTH.

CLAIM V (42 U.S.C. § 1983) BY MR. WHITE AS AGAINST DEFENDANTS DENTAL DOES AND OTHER DOES.

U.S. CONSTITUTION, AMENDMENT 8, DELIBERATE INDIFFERENCE TO SERIOUS AND PAINFUL DENTAL CONDITIONS.

117.    AS ALLEGED ABOVE MR. WHITE SUBMITS THAT THE DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED HIS RIGHTS AS GUARANTEED UNDER THE 8TH AMENDMENT TO THE U.S. CONSTITUTION AS THEY CONSTITUTED DELIBERATE INDIFFERENCE TO HIS SERIOUS AND PAINFUL DENTAL CONDITIONS WHICH RESULTED AND CONTINUES TO RESULT IN HIS WANTON SUFFERING OF PAIN AND INJURY TO HIS PERSON AND HEALTH.

CLAIM VI (42 U.S.C. § 1983) BY BOTH PLAINTIFFS AS AGAINST DEFENDANTS ONTIVEROS, BARRETT, JARRETT, ASHCRAFT, LOPEZ-MAYA, WILLIAMS, SAUCHFF SANCHEZ, OBIAK, MARTINEZ, JACKSON, LOUVERTURE AND DOES IN ADDITION TO YATES, LEONE AND MCKEEHAM.

U.S. CONSTITUTION, AMENDMENT 8 - DELIBERATE INDIFFERENCE TO PERSONAL SAFETY; FAILURE TO PROTECT.

118.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED THEIR RIGHTS AS GUARANTEED UNDER THE 8TH AMENDMENT TO THE U.S. CONSTITUTION AS THEY CONSTITUTED DELIBERATE INDIFFERENCE TO PLAINTIFFS PERSONAL SAFETIES AND A FAILURE TO PROTECT WHICH RESULTED AND CONTINUES TO RESULT IN THE SUFFERING OF PAIN AND INJURY TO THEIR PERSONS, HEALTHS AND VIOLATIONS OF THEIR CONSTITUTIONAL RIGHTS.

CLAIM VII (42 U.S.C. § 1983) BY MR. WHITE AS AGAINST DEFENDANTS LOPEZ-MAYA, ASHCRAFT, BARRETT, SANCHEZ, ONTIVEROS, JOHNSON, TORRES, BEAN, WILLIAMS (MATOUSEK), PICCININI, WILLIAMS AND DOES

U.S. CONSTITUTION, AMENDMENT 8 - DELIBERATE INDIFFERENCE TO PERSONAL SAFETY, FAILURE TO PROTECT.

119.    AS ALLEGED ABOVE MR. WHITE SUBMITS THAT THE DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED HIS RIGHTS AS GUARANTEED BY THE 8TH AMENDMENT TO THE U.S. CONSTITUTION AS THEY CONSTITUTED DELIBERATE INDIFFERENCE TO HIS PERSONAL SAFETY AND A FAILURE TO PROTECT WHICH RESULTED IN THE SUFFERING OF PAIN AND INJURY TO HIS PERSON AND HEALTH.

22-0099

CLAIM VIII (42 U.S.C. § 1983) BY BOTH PLAIN-
TIFFS AS AGAINST DEFENDANTS TORRES, JARRETT,
BARRETT, SALKOFF, WILLIAMS, SANCHEZ, ONTIVEROS,
FINLEY AND DOES

U.S. CONSTITUTION, AMENDMENT 8, DELIBERATE
INDIFFERENCE TO PERSONAL SAFETY, FAILURE TO
PROTECT.

120.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE
DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED THEIR
RIGHTS AS GUARANTEED BY THE 8TH AMENDMENT TO THE
U.S. CONSTITUTION AS THEY CONSTITUTED DELIBERATE IN-
DIFFERENCE TO THEIR PERSONAL SAFETIES AND A FAIL-
URE TO PROTECT WHICH RESULTED IN THE SUFFERING
OF MENTAL ANGUISH, DISTRESS AND INJURY TO THEIR
PERSON, HEALTH AND PSYCHE.

CLAIM IX (29 U.S.C. § 794; 42 U.S.C. § 12101,
ET SEQ) BY BOTH PLAINTIFFS AS AGAINST DEFEN-
DANTS STATE OF NEVADA, JACKSON, LOPEZ-MAYA,
STEWART, BARRETT, OBLAK, ASHCRAFT, MARTINEZ,
GARCIA, MOORE, BARTH, JOHNSON, LEONE AND DOES

121.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE
DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATED THEIR
RIGHTS AND GUARANTEES AS SET FORTH IN THE REHABILITA-
TION AND AMERICANS WITH DISABILITIES ACTS IN WHICH
AS QUALIFIED DISABLED PERSONS DEFENDANTS REFUSED TO
MAKE ESSENTIAL ACCOMMODATIONS WARRANTED BY SAID
DISABILITIES. PLAINTIFFS WERE DENIED AND EXCLUDED
FROM PROGRAMS, ACTIVITIES BENEFITS AND SERVICES OF
DEFENDANTS AND THEIR PUBLIC ENTITY ON ACCOUNT OF
THEIR DISABILITIES.

CLAIM X (42 U.S.C. § 1983) BOTH BOTH PLAINTIFFS
AS AGAINST DEFENDANTS STATE OF NEVADA, WILLIAMS,
SALKOFF, SANCHEZ, JACKSON, ASHCRAFT, LOPEZ-MAYA,
MARTINEZ, OBLAK AND DOES.

U.S. CONSTITUTION, AMENDMENT 14, DENIAL
OF EQUAL PROTECTION, TREATMENT AND BENEFIT
UNDER THE LAW.

122.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE DESCRIBED CONDUCTS OF THESE DEFENDANTS VIOLATE THEIR RIGHTS AS GUARANTEED UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AS DEFENDANTS GENDER MOTIVATED SEXUAL ORIENTATION BIAS'S AND RESENTMENT, HATRED AND HOSTILITIES DEMONSTRATE BY THEIR ETCHED SLOGANS "FAGS," "HOMO'S" "FLM" AND OTHERS THAT PLAINTIFFS WERE TARGETED IN WHOLE OR IN PART AND SINGLED OUT BY DEFENDANTS FOR THE RECKLESS DESTRUCTION AND DESECRATION OF THEIR CELL AND PROPERTIES MERELY ON ACCOUNT OF THEIR SEXUAL ORIENTATIONS.

B.      STATE

   CLAIM XI - ASSAULT AND BATTERY BY BOTH PLAINTIFFS AS AGAINST DEFENDANTS ONTIVEROS, BARRETT, JARRETT, ASHCRAFT, LOPEZ-MAYA, WILLIAMS, SALKOFF, SANCHEZ, OBLAK, MARTINEZ, JACKSON, LOUVERTURE AND DOES

123.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE DESCRIBED CONDUCTS, ACTIONS, INACTIONS, OMISSIONS OF THESE DEFENDANTS DIRECTLY INCITED, CREATED THE ATMOSPHERE FOR, TACITLY ENCOURAGED, ENDORSED AND ORDAINED THE ASSAULT AND BATTERY BROUGHT UPON PLAINTIFFS BY INMATE JOSHUA JOHNSON. DEFENDANTS ACTIONS WERE THE DIRECT CONTRIBUTING AND PROXIMATE CAUSE OF PLAINTIFFS ASSAULT AND BATTERYS AND RESULTED IN PERSONAL HARM AND INJURYS AS ALLEGED ABOVE.

   CLAIM XII - ASSAULT AND BATTERY BY MR. WHITE AS AGAINST DEFENDANTS ONTIVEROS, BARRETT, JARRETT, ASHCRAFT, LOPEZ-MAYA, TORRES, WILLIAMS, SANCHEZ, JOHNSON, BEAN, PICCININI, WILLIAMS (MATOUSEK), AND DOES

124.    AS ALLEGED ABOVE MR. WHITE SUBMITS THAT THE DESCRIBED CONDUCTS, ACTIONS, INACTIONS, OMISSIONS OF THESE DEFENDANTS DIRECTLY INCITED, CREATED THE ATMOSPHERE FOR, TACITLY ENCOURAGED, ENDORSED AND ORDAINED THE ASSAULT AND BATTERY AND STABBING BROUGHT UPON HIM BY THE ASSAULT AND BATTERY BROUGHT ABOUT BY INMATE DOMINGUEZ' INCITATION. DEFENDANTS ACTIONS WERE THE DIRECT CONTRIBUTING AND PROXIMATE CAUSE OF PLAINTIFFS ASSAULT AND BATTERY AND RESULTED IN HIS PERSONAL HARM AND INJURYS AS ALLEGED ABOVE.

40

22-0099

CLAIM XIII - DEFAMATION / SLANDER / LIBEL
AS AGAINST DEFENDANTS BERNALES, RIVAS,
AND VIZCARRA-RODRIGUEZ BY MR. WHITE

125.    AS ALLEGED ABOVE MR. WHITE SUBMITS THAT THE
DESCRIBED CONDUCTS AND ACTIONS OF THESE DEFENDANTS
IN FALSELY, MALICIOUSLY DOCTORING AND FRAUDULENTLY
INDUCING AND INCLUDING FALSE SLANDEROUS, LIBELOUS
AND DEFAMATORY ENTRIES INTO MR. WHITES MEDICAL
RECORD AND FOR PUBLIC VIEWING IN FEDERAL COURT
FILINGS CONSTITUTE DEFAMATION / SLANDER AND LIBEL
UNDER COMMON LAW. DEFENDANTS ACTIONS AND
ACCUSATIONS WERE PATENTLY FALSE AND SUBJECTED
MR. WHITE TO INTERRUPTION OF HIS CARE, RIDICULE,
SHAME, EMBARRASSMENT REJECTION, SHUN AND
INJURED HIM IN HIS CHARACTER AND REPUTATION.


CLAIM XIV - GROSS NEGLIGENCE BY BOTH
PLAINTIFFS AS AGAINST DEFENDANTS JOHNSON,
RIVAS, JARRETT, JACKSON, LOPEZ-MAYA, STEWART,
BARRETT, OBLAK, ASHCRAFT, MARTINEZ, GARCIA,
ONTIVEROS, WILLIAMS, WILLIAMS (STATOLSEN) BER-
NALES, VIZCARRA-RODRIGUEZ, ABEL, O'CONNOR,
TORRES, SANCHEZ, BEAN, PICCININI, SALKOFF LOWER-
TURE, LEONG, MOORE, BARTH, YATES, MCKEEHAM,
FINLEY, DENTAL DOES, NURSE DOES, DON DOE AND
OTHER DOES


126.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE
DESCRIBED CONDUCTS AND ACTIONS OF THESE DEFENDANTS
IN INTERACTING WITH AND VIOLATING THE RIGHTS OF
PLAINTIFF CONSTITUTED GROSS NEGLIGENCE UNDER
COMMON LAW AS DEFENDANTS FAILED TO USE REASONABLE
CARE AND CONSIDERATION IN THEIR DEALINGS WITH
PLAINTIFFS AS WOULD BE TAKEN BY ANY REASONABLE
PERSON OF ORDINARY PRUDENCE. PLAINTIFFS WERE
INJURED BY DEFENDANTS GROSS NEGLIGENCE AND
SUFFERED HARM AND SUFFERINGS. DEFENDANTS LACK
OF DUE CARE PROXIMATELY CAUSED PLAINTIFFS HARMS
AND INJURIES.

CLAIM XV - CONVERSION OF PROPERTY BY
BOTH PLAINTIFFS AS AGAINST DEFENDANTS
LOPEZ-MAYA, ASHCRAFT, GARCIA, SALKOFF,
JACKSON, OBLAK, MARTINEZ, LEONE, MOORE,
BARTH, STATE OF NEVADA AND DOES.

127.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT
THE DESCRIBED CONDUCTS AND ACTIONS OF THESE DEFEN-
DANTS IN SEIZING AND DAMAGING AND OTHERWISE
UNLAWFULLY WITHHOLDING PLAINTIFFS PROPERTIES
WITHOUT PROVISION OF DUE PROCESS AND FOR STATE
GAIN AND BENEFIT WITHOUT JUST COMPENSATION TO
PLAINTIFFS CONSTITUTE CONVERSION UNDER COMMON
LAW.

CLAIM XVI - INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS BY BOTH PLAINTIFFS
AND AS AGAINST DEFENDANTS JOHNSON, RIVAS
JARRETT, JACKSON, LOPEZ-MAYA, STEWART, BARRETT,
OBLAK, ASHCRAFT, MARTINEZ, GARCIA, WILLIAMS,
WILLIAMS (MATOUSEK), BERNALES, VIZCARRA-ROD-
RIGUEZ, ONTIVEROS, ABEL, O'CONNOR, TORRES,
SALKOFF, SANCHEZ, BEAN, PETTININI, COUVERTURE,
LEONG, BARTH, MOORE, YATES, FINLEY, DON DOE,
PHARMACY DOES, DENTAL DOES, DOE NURSES AND
OTHER DOES

128.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE
DESCRIBED OF ACTIONS AND CONDUCTS OF THESE DEFENDANTS
CAUSED PLAINTIFF THE INFLICTION OF EMOTIONAL DISTRESS,
WANTON SUFFERINGS AND PAIN. DEFENDANTS ACTIONS AND
CONDUCT WAS THE PROXIMATE CAUSE OF SAID SUFFERINGS
AND PLAINTIFFS WERE INJURED IN THEIR PERSONS AS
A RESULT.

CLAIM XVII - DESTRUCTION OF EVIDENCE,
FRAUD; FRAUDULENT CONCEALMENT; OBSTRUCT-
ION OF JUSTICE BY BOTH PLAINTIFFS AS
AGAINST DEFENDANTS JOHNSON, JARRETT,
RIVAS, BERNALES, VIZCARRA-RODRIGUEZ,
ONTIVEROS, SALKOFF, OBLAK, ASHCRAFT,
JACKSON, MARTINEZ, WILLIAMS, WILLIAMS (MA-
TOUSEK), LOPEZ-MAYA, BARRETT, SYDIONGO,
FINLEY, DOE NURSES, DON DOE AND DOES.

129.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE DESCRIBED OF ACTIONS AND CONDUCTS OF THESE DEFENDANTS WERE DELIBERATE, INTENTIONAL AND MALICIOUS ACTS IN WHICH THEY PURPOSEFULLY MADE FRAUDULENT ENTRIES INTO OFFICIAL ADMINISTRATIVE AND COURT RECORDS AND FRAUDULENTLY CONCEALED, PURPOSEFULLY DESTRUCTED AND/OR PLANTED PHYSICAL EVIDENCE BY IN WHICH TO OBSTRUCT THE DUE COURSE OF JUSTICE AND PERPETUATE FRAUD UPON NDOC AND THIS COURT BY ORDAINING SAID FRAUDULENT REPORTS AND FOR THE VERY PURPOSE OF OBSTRUCTING ANY RESULTING ADMINISTRATIVE INVESTIGATIONS AND JUSTICE AND TO OTHERWISE PURPOSEFULLY DEPRIVE PLAINTIFFS OF DUE PROCESS OF LAW.

CLAIM XVIII - PROFESSIONAL MALPRACTICE BY BOTH PLAINTIFFS AS AGAINST DEFENDANTS VIZCARRA-RODRIGUEZ, DOE NURSES AND OTHER DOES.

130.    AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE DESCRIBED OF ACTIONS AND CONDUCTS OF THESE DEFENDANTS UNDER COMMON LAW CONSTITUTED PROFESSIONAL MALPRACTICE. THESE DEFENDANTS OWED PLAINTIFFS A RESPONSIBILITY AND DUE CARE TO COMPORT WITH ALL LICENSING PRACTICES OF NURSING AND TO PROCEED AND TREAT PLAINTIFFS WITH AND USE ORDINARY DEGREE OF SKILL AND CARE AS WOULD AND IS TO BE EXPECTED FROM ANY ORDINARY LIKE PRUDENT PERSON OF NORMAL SENSIBILITY IN THE SAME PROFESSION. DEFENDANTS FAILED TO USE THAT DEGREE OF SKILL AND CARE BREACHING THAT DUTY OWED PLAINTIFFS TO PLAINTIFFS DETRIMENT AND WHICH RESULTED IN PLAINTIFFS INJURIES AND SUFFERINGS.

CLAIM XIX - MEDICAL MALPRACTICE BY BOTH PLAINTIFFS AS AGAINST DEFENDANTS RIVAS, BERNALES, VIZCARRA-RODRIGUEZ, ABEL, O'CONNOR, MEDICAL, DENTAL AND NURSING DOES

AS ALLEGED ABOVE PLAINTIFFS SUBMIT THAT THE DESCRIBED OF ACTIONS AND CONDUCTS OF THESE DEFENDANTS UNDER COMMON LAW CONSTITUTED MEDICAL MALPRACTICE. THESE DEFENDANTS OWED PLAINTIFFS A RESPONSIBILITY AND DUE CARE TO COMPORT WITH ALL LICENSING PRACTICES OF NURSING, DOCTORING, DENTAL AND PSYCHOLOGY AND TO PROCEED AND TREAT PLAINTIFFS WITH AND USE ORDINARY DEGREE OF SKILL AND CARE AS WOULD BE AND IS TO BE EXPECTED FROM ANY ORDINARY LIKE PRUDENT PERSON OF NORMAL SENSIBILITY IN THE SAME PROFESSION. DEFENDANTS FAILED TO USE THAT DEGREE OF SKILL AND CARE BREACHING THAT DUTY OWED PLAINTIFFS TO PLAINTIFFS DETRIMENT AND WHICH RESULTED IN PLAINTIFFS INJURIES AND SUFFERINGS.

22-0099

## VII.   PRAYER FOR RELIEF:

WHEREFORE PLAINTIFFS RESPECTFULLY MOVE THIS COURT FOR RELIEF AS FOLLOWS:

1). THAT THE COURT ISSUE A DECLARATORY JUDGMENT THAT THE ACTIONS, INACTIONS, OMISSIONS, POLICIES, REGULATIONS AND CONDUCTS DESCRIBED WITHIN THE INSTANT COMPLAINT ARE BOTH OFFENSIVE TO AND VIOLATE INTERNATIONAL LAW, HUMAN, CIVIL AND CONSTITUTIONAL RIGHTS OF PLAINTIFFS AND VARIOUS STATE AND FEDERAL LAWS AND DEFENDANTS OWN ADMINISTRATIVE REGULATIONS AND OPERATIONS PROCEDURES;

2). THAT THE COURT ISSUE ADEQUATE AND EFFICIENT INJUNCTIVE RELIEF AS MAY BE APPLIED FOR BY PLAINTIFFS DURING THE COURSE OF THIS ACTION NECESSARY FOR THE PRESERVATION OF LIFE, PREVENTION OF ARBITRARY, INHUMANE AND WANTON UNNECESSARY SUFFERINGS AND PAINS AND IN WHICH TO PRESERVE THE STATUS QUO DURING THE PENDENCY OF THIS ACTION;

3). COMPENSATORY DAMAGES OF $1,500,000.00;

4). NOMINAL DAMAGES OF $1.00;

5). PUNITIVE DAMAGES OF $350,000.00;

6). TRIAL BY JURY ON ALL MATTERS TRIABLE BY JURY;

7). SUCH OTHER AND FURTHER RELIEF AS THE COURT MAY DEEM JUST, FAIR AND EQUITABLE INCLUDING PLAINTIFFS' REIMBURSEMENTS OF ALL COSTS ASSOCIATED WITH THE COMMENCEMENT, PROSECUTION AND CONCLUSION OF THIS ACTION.

## VIII.   DECLARATION

BOTH PLAINTIFFS S. SGANAH DIXON AND TONEY A WHITE, III, BEING SWORN UNDER OATH UNDER THE LAWS OF THE STATE OF NEVADA AND UNITED STATES HEREBY ATTEST THAT THE ABOVE IS TRUE AND CORRECT.

BY: _____
(S. SGANAH DIXON)

DATED: ~~APRIL 17TH 2022~~   PLAINTIFF IN PRO SE
JULY 19, 2022

44

22-0099

JULY 19, 2022

DATED: ~~APRIL 17, 2022~~

BY: (TRACEY A WHITE, III )
CO-PLAINTIFF IN PRO SE

45
22-0099